LESLIE E. VIVION ET AL. v. B. F. NICHOLSON ET AL.

Decided February 17, 1909.

**1.—Administration upon Estate of Husband—Sale of Wife's Separate Estate.**

Under an administration upon the estate of a deceased husband, a Probate Court is without authority to order a sale of land belonging to the separate estate of the deceased wife. Such sale is absolutely void as against the minor heirs of the wife when the purchaser is charged with notice of the facts.

**2.—Administrator's Sale—Heirs—Estoppel.**

The minor heirs of a deceased wife cannot be estopped as to their right to her separate property by the acts of an administrator of their father's estate in the sale of land inherited by such minors from their mother, and this, though a part of the proceeds of such sale was set apart by the Probate Court as an allowance to said minors in the administration upon their father's estate.

**3.—Same—Benefit of Proceeds—Subrogation.**

The fact that the proceeds from an illegal sale of land, belonging to the separate estate of a deceased wife, by the administrator of the husband's estate are applied by said administrator to the benefit of the minor heirs of the wife, will not create an equitable lien in favor of the purchaser at such sale on the property sold.

**4.—Equitable Lien—Essential Elements.**

The foundation of every equitable lien is a contract, express or implied, which deals with or operates upon some specific property. The contract must be made by some authorized person or arise by implication from his acts, or if made by some unauthorized person it must be ratified by the person to be affected by it.

**5.—Same—Minors.**

An unauthorized person cannot create a lien on the property of a minor by a sale of such property to a person who has notice that the sale was without authority; and the subsequent application of the proceeds of the sale by such person to the benefit of the minor would not create an equitable lien on the property so sold.

Appeal from the 45th Judicial District, Bexar County. Tried below before Hon. J. L. Camp.

*N. A. Rector,* for appellants.

*Floyd McGowan* and *C. C. Clamp,* for appellee Nicholson.—The probate court had taken jurisdiction of the property involved, and the same was lawfully administered; the sale to B. F. Nicholson was lawfully made and duly confirmed; it would be inequitable to require the said B. F. Nicholson to return the property purchased without reimbursement to him of the said $1,098.50 with interest thereon from the 11th day of December, 1905; and by reason of the facts alleged and approved, the trial court had the right, and there was no error in his judgment, adjudging a lien in said Nicholson's favor for said $1,098.50, with interest from December 11, 1905, on the premises recovered against him, and we submit the following authorities, which sustains the contention of appellee in this case: Brown v. Elmendorf, 87 Texas, 56; Saunders v. Isbell, 5 Texas Civ. App.,

515; Long v. Moore, 48 S. W., 43; Wren v. Peel, 64 Texas, 374; Mangum v. White, 41 S. W., 80; Brackenridge v. Rice, 30 S. W., 588; McBride v. Moore, 37 S. W., 450; Allen v. Bright, 23 S. W., 712.

FLY, Associate Justice.—This suit was instituted in Dimmitt County by B. F. Nicholson, E. A. Moore, J. R. Purnell, Victoriana Caberra, Asa B. Webb, Laura M. Owen and J. C. Owen, Jr., against Leslie B. Vivion, Otto D. Vivion, Gussie O. Vivion, Lottie Mae Vivion, Lexie E. Vivion and Laura Lee Vivion, to remove cloud from the title to certain lots of land, part of the William Land survey in Dimmitt County, being an addition to the town of Carrizo Springs known as Vivion Heights. It was alleged that the defendants, here appellants, were minor children and the heirs of L. E. Vivion and Mollie E. Vivion, deceased. W. H. Davis was appointed guardian *ad litem* of the children and he and W. M. Vivion, as next friend, filed demurrers, general denial and plea of not guilty, and by a cross-action sued the plaintiffs in trespass to try title. Appellees in answer to the cross-action alleged that the land had been sold to Nicholson by the administrator of the estate of L. E. Vivion under order of the County Court and that the purchase money, $1,098.50, had been used by the administrator to pay an allowance of $600 to the children and to discharge certain liens on property belonging to the estate, and praying for the foreclosure of an equitable lien on the property. There was an agreed judgment as to certain of the lots claimed in the cross-action, by which they were decreed to be the property of appellees, Nicholson paying to appellants the full value of the property. The trial was then held as to the remaining lots or parcels of land and judgment rendered in favor of appellants for the property, but an equitable lien on the property for $1,098.50, purchase money paid by Nicholson, was decreed in his favor and that he recover all costs of the suit. This appeal was perfected by the defendants.

It was proved that Mollie E. Vivion, the mother of appellants, died on September 10, 1903, and their father, L. E. Vivion, died on January 8, 1905; that appellants are minors and the only heirs of L. E. and Mollie E. Vivion. When Mrs. Vivion died she owned in her separate right 88½ acres of land which had been sold to her by P. C. and Carrie May Tumlinson by deed dated March 7, 1901. After the death of L. E. Vivion, administration was opened on his estate and the administrator obtained an order of sale of the property in controversy and the sale was made to B. F. Nicholson, who paid $1,098.50 for the land. The administrator in his final report shows amounts collected for the estate amounting to $1,683.50, and he afterwards sold land for $75 making the total received by the administrator $1,758.50. He reported the disbursement, among other things, of $600 allowance to minors and to first class claim of Eagle Pass Lumber Company for $568.87. There was no evidence, except the final report of the administrator, showing payment of the $600 allowance or the claim of the lumber company. An order of the County Court was introduced in evidence in which it was stated that there were mechanics liens on two parcels of land in Carrizo Springs for sums amounting in the aggregate to $561.65, and the property was

ordered sold to pay off the liens. It does not appear that the sale took place, but the two parcels of land were set apart to the minors as a homestead and it may be surmised that the money mentioned in the final report as being paid to the lumber company was used to cancel the liens. Nicholson testified that he employed an attorney to investigate the title, who pronounced it good, and that he thought he was getting a good title and paid a fair price for it.

The evidence showed that the land in controversy was the separate property of Mrs. Mollie E. Vivion, deceased, who was the mother of appellants. The deed was made to her on March 7, 1901, and it was recited in it that it was made to "Mollie E. Vivion by the direction of her husband, L. E. Vivion, said land to be the separate property of the said Mollie E. Vivion." That deed was placed on record in Dimmitt County on July 9, 1901. Being the separate estate of Mrs. Vivion, the administrator of the estate of L. E. Vivion had no authority over it whatever, and the County Court of Dimmitt County had no more power to order it sold than it had to decree the sale of the property of any other man or woman in the county. Nicholson, the purchaser at the administrator's sale, was charged with knowledge by the recorded deed to Mrs. Vivion that the County Court was acting beyond its jurisdiction and without the warrant of law in ordering the sale of the land. He could not in law be a purchaser in good faith. The deed charged him with notice that the land did not belong to the estate, and he was charged with knowledge of the law that the land of one person can not be sold under an administration on the estate of another person.

Having bought the land with notice, which was necessarily held by the trial court when it set aside the sale, there is but one theory upon which the minor children of Mrs. Vivion can be held liable for the money, if it was used in their behalf, and that is on the ground of estoppel. As said in French v. Grenet, 57 Texas, 273: "As affecting the question of title, there is a well recognized distinction between those cases of judicial sales irregularly made by virtue of a judgment which the court had jurisdiction to render, and those regularly made by virtue of a judgment which the court did not have jurisdiction to render. The former is the invalid execution of a valid power, which a court of equity in proper cases will aid; the latter is the valid execution of a defective power which of itself is not sufficient to pass title, though relief in some cases may be granted on other grounds, as by estoppel." In this instance the court had no jurisdiction to render the order of sale, and the regularity of the proceedings thereunder could not give vitality to the sale, and Nicholson's sole ground of relief must rest on the doctrine of estoppel being applied to the minors on the ground that they obtained benefits arising from the purchase money paid for their lands sold without warrant of authority.

In this case the minors were not represented by a guardian, they were not in any manner parties to the judgment of the County Court which ordered the sale of their land which they had inherited from their mother, and that order in an administration of their father's estate. There was no more connection between the two estates than between those of any two persons not related to each other in any

manner, and in determining the question of estoppel as applied to the minors that fact must be kept in mind.

If the administrator had been acting in the sale of land in connection with which he had been in some way vested with control, his acts in the premises might estop the heirs of the estate (Thomas v. Brooks, 6 Texas, 371), but his acts could not affect the heirs of the estate he was representing in connection with lands not belonging to the estate under administration. The minors could not be bound by the act of the administrator in selling and receiving money for land over which he had no authority, because he did not do so as their representative and, not being *sui juris,* they could not be held responsible for the unauthorized disposal, even though for their benefit, of funds arising from the illegal sale of their property. There were no representations on the part of the minors, nor even on the part of the administrator, and the estoppel must rest upon the application to the uses of the minors of the funds arising from an unauthorized sale of the lands belonging to the minors and not to the estate. The law of estoppel cannot be applied to the minors in this case, and the unauthorized use of the money paid by Nicholson to the administrator cannot create an equitable lien on the land of the minors. It was not done by them or any one representing them, they could not help it and should not be held responsible for it.

There was no evidence that the minors received any of the money paid to the administrator by Nicholson unless it be that the final report of the administrator of the estate of L. E. Vivion proves it, in which it is stated that disbursements were made to the amount of $1,784.65, of which $600 was an allowance to the minors, and the balance being debts and expenses in connection with the estate of L. E. Vivion. So, if that report is permissible in this suit as proof that $600 was paid to the minors, an equitable lien, so-called, of $1,098 is placed on the estate they had inherited from their mother, by reason of receipt of that allowance. It is grossly inequitable rather than being equitable.

In the proceedings of the County Court it appears that the lumber accounts, amounting in the aggregate to $568.87, were secured by liens on land belonging to the estate of L. E. Vivion, but it also appears that enough money, other than that received from Nicholson, was collected to have paid off and discharged the liens, and there is no testimony that tends to prove that any of Nicholson's money was used in paying off the liens. It would seem from the final account that not only the property on which the liens existed and other property of the estate was used to pay debts, but that property belonging to another estate was used, and the estate was reported to be utterly bankrupt.

It must be kept in view that this is not a proceeding to subject the homestead, set apart to the minors, to an equitable lien for the money paid by Nicholson which was used in paying off a mechanics lien, but is an attempt to subject other land of the minors to such lien, which was sold under the invalid order of a court which had no jurisdiction over the land it ordered sold. The proposition upon which equitable relief is asked is that land belonging to minors which

is not being administered, if sold by an administrator of another estate in which the minors are interested and the proceeds used for the benefit of the minors, that use of the funds creates an equitable lien on the property illegally sold. This is carrying the doctrine to a greater extent than has ever before been dreamed of in a court of equity. It is not pretended that there was any fraud in the transaction, that the minors were in the most remote manner connected with it, but the naked proposition is that although the purchaser at the illegal sale had full legal notice that the land did not belong to the estate being administered, but to the minor heirs of Mrs. Vivion, still, because the money was used by the administrator so as to benefit the minors, they must in equity and good conscience pay the money or have their land subjected to a lien.

The foundation of every equitable lien is a contract, either express or implied, which deals with or operates upon some specific property. The contract must be made by some authorized person or arise by implication from his acts, before a lien in equity could be created against the property of a person to be affected by it. No doubt, if there was an implied ratification of the act of an unauthorized person and an appropriation of the benefits arising from the contract made by him, the lien might arise, but when the contract is made by one without authority and there can be no ratification of the illegal contract on account of the owner of the property not being *sui juris,* the doctrine of estoppel upon which the lien must rest would not be applicable and the lien could not exist.

If it be true that the term "implied contract" as applied in cases of equitable liens is a misnomer and a fiction and that the lien exists *ex aequo et bono,* that is, wholly from considerations of right and justice and from the application to certain conditions of fact of those truths that lie at the base of equity jurisprudence, still, the doctrine cannot be applied to a person incapable of acting and who is not represented by any one lawfully empowered to represent him. The claim for an equitable lien arising, not from an express contract but out of principles of right and justice, must necessarily be based on the doctrine of estoppel which cannot be applied to the minors in this case. It usually arises in cases of expenditures by one joint owner on real or other property, or in cases where a party innocently and in good faith makes improvements on the property of another, but no case has arisen, we think, where an unauthorized person has created a lien on the property of an infant by a sale of it to a person with full notice that he had no authority to make the sale. The use of the money after the sale could not create or give rise to the lien.

In this case the equitable lien is not sought to be applied to the property that received the benefit of the purchase money paid by Nicholson, but it is sought against other property of the minors for the benefit of which the money was not expended, and to secure money not only expended on other land but that expended in paying debts of another estate. We do not think that equity will create the lien sought in this case.

The judgment will be affirmed in all particulars except as to decreeing a lien upon the land of the appellants, which part of the

judgment . is reversed and judgment here rendered that appellee Nicholson take nothing as to appellants, and that he pay all costs incurred in this and the lower court.

*Affirmed in part and reversed and rendered in part.*