## MILLER et al. v. HIMEBAUGH.

(Court of Civil Appeals of Texas. Amarillo. Jan. 4, 1913. On Motion for Rehearing, Feb. 1, 1913.)

1. TRIAL (§ 382*)—CONFLICTING EVIDENCE— QUESTION FOR COURT.

The court trying a case without a jury must weigh the conflicting evidence, and accept that which appears worthy of credit.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 898; Dec. Dig. § 382.*]

2. TRUSTS (§ 101*)—CONSTRUCTIVE TRUSTS— CREATION.

Where plaintiff gave money to defendant to erect a building on plaintiff's land, but defendant to perpetrate a fraud, and, in violation of his fiduciary relation, used the money in erecting a building on his own land, a constructive trust resulted in favor of plaintiff in defendant's land.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 152; Dec. Dig. § 101.*]

3. TRUSTS (§ 349*) — BREACH OF TRUST — EQUITABLE RELIEF.

Where one, by breach of a trust and in violation of his fiduciary relations, obtains an advantage, equity may prevent him from retaining the benefit, and may reach all those actually concerned in the wrong, and directly and knowingly participating in the fruits thereof.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 514; Dec. Dig. § 349.*]

4. TRUSTS (§ 356*)—CONSTRUCTIVE TRUSTS— PARTIES CHARGEABLE WITH TRUST.

Where plaintiff advanced money to defendant to erect a building on plaintiff's land, and defendant fraudulently used the money in erecting a building on land in his possession under an executory contract of purchase, and thereafter surrendered his right to complete the purchase, and the land was conveyed to a third person with knowledge of the fraud by the vendor of defendant, who also had knowledge of the fraud, the third person took the property with the constructive trust imposed thereon in favor of plaintiff.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 529–538; Dec. Dig. § 356.*]

5. FIXTURES (§ 31*)—ANNEXATION TO REALTY —HOUSE.

Fixtures, such as a house, become part of the realty on which it is situated, and as such cannot be severed.

[Ed. Note.—For other cases, see Fixtures, Cent. Dig. § 62; Dec. Dig. § 31.*]

6. TRUSTS (§ 340*)—CONSTRUCTIVE TRUSTS— LIABILITY.

Where equity fastened a constructive trust on a house forming a part of the realty on which it was situated, equity could decree a lien on the land, and direct a sale thereof to protect the interest of the beneficiary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 501; Dec. Dig. § 340.*]

### On Motion for Rehearing.

7. TRUSTS (§ 371*)—CONSTRUCTIVE TRUSTS— SUIT TO ESTABLISH — CROSS-BILL — NECESSITY.

Where a person is made a party defendant in a suit to establish a resulting trust in land to adjust his equities, if any, he must by an-

swer in the nature of a cross-bill set up the superiority of his equities, if any, and allege facts giving him equitable rights such as the right of subrogation, and ask for adjustment of the equitable claims of the respective parties, or the court may only establish plaintiff's claim.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 588–599; Dec. Dig. § 371.*]

Appeal from District Court, Dallam County; D. B. Hill, Judge.

Action by Mrs. Ellen Himebaugh against C. F. Miller and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Veale & Davidson, of Amarillo, and J. S. Bailey, of Dalhart, for appellants. W. B. Chauncey, of Dalhart, and M. R. Brant, of Bedford, Iowa, for appellee.

HUFF, C. J. This suit was instituted by the appellee, Mrs. Ellen Himebaugh, on March 10, 1911, against H. J. C. Reed, E. W. H. Miller, C. F. Miller, David Fausch, and Frank A. Baxter to establish and fix a trust on certain property in Dallam county. The petition is as follows:

"(1) Plaintiff says that she resides in Ringold county, Iowa, and has resided in said county for the last 40 years, save and except a short time during December of 1908, and up until about April 30, 1909, that she resided in Dallam county, Tex., and that on or about June 1, 1908, she was the owner of the following described one hundred and sixty-nine (169) acres of land, being the east 950.5 varas of that part lying southeast of the Ft. Worth & Denver City Railway Company's right of way of section No. 22, Capitol Syndicate subdivision, block No. 3, as shown by the plat of such subdivision of record in the Deed Records of said Dallam County, Tex., Volume 11, pp. 400–403, which land is more particularly described as follows: Beginning at the southeast corner of said survey No. 22, block 3, Capitol Syndicate subdivision, at a post painted 22–23–14–15, thence north, 477 varas, to a point, the intersection of said survey No. 22 on the west line of the Ft. Worth & Denver City Railway Company's right of way, thence north, fifty-four minutes eight seconds west, along the west line of the Ft. Worth & Denver City Railway Company's right of way, 1,168 varas, to a point; thence south parallel with the west line of said survey No. 22, 1,156 varas, to a point in the south line of said survey No. 22; thence east, 950.5 varas, to the place of beginning, said land being adjoined to the town of Ware, and being located in Dallam county, Texas.

"(2) Plaintiff further says that the defendant Reed on or about August 4, 1908, owned or had an interest in the following described land: The northeast quarter of section No. 15, block No. 3, Capitol Syndicate subdivision of land in Dallam county, Tex., as shown by the map of such subdivision of record in the Deed Records of Dallam County, Tex.,

Volume 11, pp. 400–403, which land is adjoining the plaintiff's land above described.

"(3) Plaintiff further says that on or about August 4, 1908, she entered into an oral contract with the defendant Reed, whereby plaintiff was to furnish said defendant Reed with $1,850, or so much thereof as was necessary to build her a house on her said land as above described, and that the defendant Reed then and there agreed with plaintiff that, if plaintiff would furnish the money, he would build said house on plaintiff's said land; that in accordance with said contract plaintiff paid to said defendant Reed in trust the sum of $1,850 to build said house on her said land.

"(4) Plaintiff further says that said defendant Reed is and was at the time of their said contract the son-in-law of plaintiff, and that plaintiff had implicit confidence in said defendant, and, wholly relying upon his promise to build said house on her said land, she delivered to him, through checks and drafts, the above sum of money.

"(5) Plaintiff would further show to the court that the defendant Reed did build said house but that he built same upon the land owned by the defendant Reed, as above described, and thereby totally ignored his contract with plaintiff to build said house on plaintiff's said land, and that said defendant built said house on his land on or about the month of December, A. D. 1908, the exact time of which is unknown to this plaintiff. Plaintiff further says that said defendant concealed said fact from this plaintiff, and that she did not know of same until on or about November 23, 1908; that she resided a distance of about 700 miles from Ware, Tex., where said house was located, and that she was not acquainted with anyone at Ware, Tex., except the defendant Reed and his immediate relatives, and that she had no reason whatever to believe that said defendant Reed had violated his contract, and that upon her arrival at Ware, Tex., she learned that said defendant Reed had violated his contract as above alleged, and she then and there entered a protest against same, and that plaintiff depended entirely upon the said defendant Reed to carry out his contract, and had no one else to depend upon to see that same was carried out; that plaintiff is seventy-four (74) years old, and was not able to look after the erection of said house, which fact was well known to said defendant at the time said contract was made, and plaintiff further alleges that said defendant Reed made said promise to plaintiff concerning the erection of said house for the purpose of cheating and defrauding plaintiff out of said sum of money.

"(6) Plaintiff further says that, if she be mistaken as to the allegation that the said defendant made said promise to this plaintiff for the purpose of cheating and defrauding her out of this money, then she alleges

that said defendant built said house on his land through mistake, and thereby has deprived plaintiff of the value and use of same, and that said house has at all times remained upon the premises owned by the defendant Reed, or on which he held an interest in since the time same was built.

"(7) Plaintiff further alleges that the defendant Reed moved from the state of Iowa to the state of Texas, in the county of Dallam, on or about November 15, 1908, and that said defendant permanently left the state of Texas and moved to the state of Nebraska during the months of July or August, 1910, and has never returned to nor resided in the state of Texas since that time. Plaintiff further says that between November 15, 1908, and the month of August, 1910, said defendant was absent from the state of Texas for a term of at least six months.

"(8) Plaintiff further says that the defendants, and each of them, save and except David Fausch, who has filed a disclaimer, are claiming some interest in the land upon which said house was built, the extent of said interest or claim being unknown to plaintiff, and plaintiff further says that each and all of the above-named defendants well knew at the time they purchased said interest in said Reed land that the above amount of money was furnished by plaintiff to defendant Reed for the express purpose of building a house on plaintiff's own land and not on the land owned by defendant Reed, and that they also well knew at the dates of the respective purchases by the defendants of the Reed land that the defendant Reed had violated his contract with plaintiff to build said house and used said sum of money in building same upon the above-described land as claimed by these defendants.

"Wherefore, plaintiff prays that upon a final hearing hereof the defendants and each of them having answered herein, that she have a personal judgment against the defendant Reed for the sum of $1,850, and a judgment against each of the defendants for a foreclosure of her lien upon the above-described property as alleged to be claimed by the defendants for the sum of $1,850, together with 6 per cent. interest from January 1, 1909. And said land and premises be decreed to be sold according to law, and that the sheriff or other officer executing said order of sale place the purchaser of said property sold under said order of sale in possession thereof within 30 days after date of sale for costs of suit for general and special relief. And plaintiff further prays the court that, in the event the court shall find that she is not entitled to the relief as above prayed for, then she asks for a judgment of the court for the removal of said house from the above-described premises and that the title to said house be declared in this plaintiff, for costs of suit, for general and special relief, in law and in equity, that she may be entitled to receive."

The appellees answered by general denial and specially. Judgment was rendered by the court, fixing a lien on the land described in the plaintiff's petition for the sum of $2,164.50. The court filed his conclusions of fact and of law, which are as follows: "On June 1, 1908, plaintiff was the owner in fee simple of the following described land, situated in Dallam county, Tex.: One hundred and sixty-nine (169) acres of land, being the east 950.5 varas of the part lying southeast of the Ft. Worth & Denver Railway Company's right of way of section No. 22, Capitol Syndicate subdivision, block No. 3, as shown by the plat of such subdivision of record in the Deed Records of said Dallam County, Tex., Volume 11, pp. 400–403, which land is more particularly described as follows: Beginning at the southeast corner of said survey 22, block 3, Capitol Syndicate subdivision at a post painted 22–23–14–15, thence north, 477 varas, to a point, the intersection of said survey No. 22, on the west line of the Ft. Worth & Denver City Railway Company's right of way; thence north, 44 minutes 8 seconds, west along the west line of the Ft. Worth & Denver City Railway Company's right of way, 1,168 varas, to a point; thence south parallel with the west line of said survey No. 22, 1,156 varas, to a point in the south line of said survey No. 22, thence east 950.5 varas to the place of beginning, said land being adjoined to the town of Ware, and being located in Dallam county, Tex., and that she continued to own said land until some time in the year 1909. And that plaintiff bought said land from the defendant C. E. Miller. That on August 4, 1908, or a few days prior thereto, plaintiff entered into a contract with the defendant H. J. C. Reed, whereby plaintiff was to furnish the defendant Reed with the sum of eighteen hundred and fifty ($1,850) dollars, with which the defendant Reed was to build a house for plaintiff on plaintiff's above-described land, and that the defendant Reed then and there agreed with plaintiff to use said money in building plaintiff a house on plaintiff's land, and that, in accordance with said contract, plaintiff on August 4, 1908, paid to the defendant Reed for the purpose of building said house on plaintiff's said land the sum of sixteen hundred and fifty ($1,650) dollars, and that thereafter, on September 22, 1908, plaintiff paid to the defendant Reed the further sum of two hundred ($200) dollars, for the purpose of completing the building of said house which the defendant Reed had agreed to build on plaintiff's land.

"I further find that at the time said contract was entered into by and between plaintiff and the defendant H. J. C. Reed that said defendant Reed held a written contract of purchase for the following described land: The N. E. ¼ of section No. fifteen (15), block No. three (3), Capitol Syndicate subdivision, located in Dallam county, Tex., which land

is adjoining to plaintiff's said land, and that the written contract of purchase so held by the defendant Reed was executed by the defendants, or some of them who held the legal title to said land at the date they entered into said contract with Reed, and that each of the defendants knew on August 4, 1908, of the existence of the written contract of purchase which the defendant Reed held, and I further find that the defendant Reed, by virtue of his written contract of purchase, went into actual possession of the land so held under his written contract during the month of October, 1908, and that the defendant Reed paid the defendants the sum of three hundred ($300) dollars as a part of the purchase price of said land prior to building the said house, and that the remainder was to be paid on a subsequent date.

"I further find that the defendant Reed, in violation of his contract with plaintiff to build said house on plaintiff's land, used said sum of eighteen hundred and fifty ($1,850) dollars in building said house upon the land which defendant Reed held by virtue of his written contract of purchase, and that he did so without the knowledge or consent of plaintiff. I find that the defendant Reed used said sum of eighteen hundred and fifty ($1,-850) dollars furnished by plaintiff in building said house on the land held by him, and that he built said house on his land during the month of September, 1908.

"I further find that the defendants, and each of them, who purchased said Reed land on or after October 1, 1908, had notice of, and knew of, the facts that the defendant Reed had violated his contract with plaintiff, and that the defendants, and each of them, knew that the defendant Reed had wrongfully used said sum of eighteen hundred and fifty ($1,850) dollars in building said house on the Reed land, and that the defendants, and each of them, knew that the defendant Reed had agreed with plaintiff to build said house upon plaintiff's land.

"I further find that after the defendants and each of them knew of the violation by defendant Reed of the contract which the defendant Reed had with plaintiff that the defendants who executed the contract of purchase to the defendant Reed agreed with the defendant Reed, and without the consent or knowledge of plaintiff, to rescind said contract of purchase, and that said contract of purchase was totally rescinded, and that any obligation existing between the defendant Reed and the other defendants by reason of said contract of purchase was canceled and held for naught and the land on January 6, 1911, was conveyed by the same person who had prior thereto entered into said contract with Reed for the sale to him of said land to defendant E. W. H. Miller, who had notice at the time of such transfer of plaintiff's intervening rights.

"I further find that on the 23d day of November, 1911, the defendant E. W. H. Miller, by warranty deed, conveyed said land to William Starch. I further find that this suit was filed on the 10th day of March, 1911, and that on said date a notice of lis pendens in said suit was filed for record in Dallam county, Tex., in book No. 1, p. 42, of the Lis Pendens Records of said county.

"I further find that the defendant Reed moved to the state of Texas during the month of October, 1908, and that he permanently left the state of Texas on the 17th day of December, 1910, and that during said time said defendant Reed was absent from the state of Texas for a period of five months, and I further find in this connection that the plaintiff did not discover, nor did she know, that the defendant Reed had violated his contract with her, and that he had built said house on his land, instead of hers, until November 23, 1908; that the said money was the property of plaintiff.

"I file the following as my conclusions of law in the above case:

"(1) Since the defendant Reed used money belonging to the plaintiff in building a house on land held by him without her knowledge or consent, and contrary to the contract he made with plaintiff, plaintiff has a lien upon said property held by the defendant Reed, and is entitled to a foreclosure of her lien on said property against all purchasers with notice of same in satisfaction of the sum of money so misappropriated.

"(2) I further find that the defendants by reason of the cancellation of the contract of sale of said land to defendant Reed, and by the resale thereof to another, thereby extinguished their claim for any purchase money due them by Reed as the unpaid part of the purchase price for same, and such claim thereby ceased to be a substitute obligation as did the purchase-money lien on said land between said parties, and in taking back said land under such circumstances they took it subject alone to plaintiff's lien which had attached prior to the time they canceled said contract with Reed, and took back and reconveyed to another said land; that plaintiff's claim is not barred by limitations; that all parties taking title to the land since the attaching of plaintiff's said lien thereon had such notice of plaintiff's right as renders the land in their name subject to foreclosure of plaintiff's lien, and the lis pendens notice filed at time of filing suit renders the land in the hands of subsequent purchasers subject also to plaintiff's right to fix and foreclose her lien; that plaintiff is entitled to a foreclosure of her lien as a first lien on said land for the sum of eighteen hundred and fifty ($1,850) dollars, with interest thereon from January 1, 1909, at 6 per cent. per annum."

The first, third, fourth, fifth, eighth, ninth, and tenth assignments of error do not appear to be based upon any ground in the motion for new trial filed in the trial court. Rule 24 for the Courts of Civil Appeals [1] pro-

[1] 142 S. W. xii.

vides: "The assignment of error must distinctly specify the grounds of error relied on and distinctly set forth in the motion for new trial in the cause and a ground of error not distinctly set forth in a motion for new trial in the cause and not distinctly specified in reference to that which is shown in the record, or not specified at all, shall be considered as waived." The second, sixth, and seventh assignments are based upon grounds of the motion for a new trial sufficiently specific to support the assignments, and are deemed sufficient to raise the main questions in the case discussed by appellants in their brief. We will therefore consider the three assignments without referring to them in terms.

[1, 2] It is insisted the evidence is not clear and convincing, and therefore insufficient to establish a constructive trust. It is admitted that the appellee, Mrs. Himebaugh, furnished the money to appellant Reed, which was placed in the house on the land of Reed. She sold her house in Diagonal, Iowa, with the purpose and intent to move to Texas. Reed's first wife was the daughter of appellee, who died some 15 years before the trial, and after her death, some 12 or 14 years before the trial, Reed married the second time, and was at the time of the trial and at the time he built the house living with his second wife. It is shown he did not have the money to pay for the land he bought, much less build the house. Appellee's land was adjoining Reed's tract. She was making an effort to improve her lands. She testified that she sent the money to Reed to build a house on her land, and that he agreed to use the money so turned over to him to build a house on her land. The witness Tope testified that Reed told him that he had tried to get appellee to build a house on his land, but she refused to do so, and that he was going down to build on her land. We think the facts clearly and convincingly show that the money was given Reed to erect a house on appellee's land, and that he agreed to erect the house thereon, but, instead of doing so, built a house on his own land, and that all the money that went into that house was Mrs. Himebaugh's. The fact that others testified that the agreement was to use the money to erect a house on Reed's land does not affect the clearness of the evidence offered by appellee. It only offers a clear conflict, and the court trying the case had the right in such case to accept that evidence which to him appeared worthy of credit. It doubtless occurred to the trial court that it was not at all probable this old lady, 74 years of age, would deprive herself entirely of a home of her own, and put herself in the hands of the then wife of Reed, who occupied the place of her deceased daughter. Neither Reed nor his wife were related to the appellee, and the only relative of appellee was Reed's son by his first wife, who was some thirty-odd years of age and

married. There is no good reason shown why she should take the savings of a lifetime and donate to Reed and his second wife. The improbability of the contention of Reed must have appealed to the trial court, and we think the evidence amply supports his findings.

The facts alleged in the petition and the facts found by the trial court created a constructive trust. It is said in the books that trusts of this character are created by a desire of equity to enforce honesty and fair dealing. It is thus raised to prevent fraud or to prevent willful violation of fiduciary relations, or which are actually or constructively fraudulent, and is called a trust "ex maleficio." The party perpetrating the fraud is made a trustee "in invitum," and the defrauded party the "cestui que trust." Hendrix v. Nunn, 46 Tex. 141; Schneider v. Sellers, 98 Tex. 380, 84 S. W. 421; Neil v. Yager, 22 Tex. Civ. App. 628, 55 S. W. 416; Fisher v. Wood, 65 Tex. 199; 3 Pomeroy's Equity Juris. (3d Ed.) §§ 1053, 1044, 1048. Whether the relation existing between the appellee and Reed be treated as that of principal and agent or beneficiary and trustee, the principles of equity with reference to the property and dealing therewith are substantially the same. Boyd v. Jacobs, 6 Tex. Civ. App. 442, 25 S. W. 682.

[3] Where a party through a breach of his trust and in violation of fiduciary relations thereby obtains an advantage, equity has the power and in many methods to prevent such person from reaping any advantage by such fraud, whether actual or constructive. The remedy which equity gives "reaches all those who are actually concerned in the fraud, all who directly and knowingly participate in its fruits, and all those who derive title from them voluntarily or with notice." "A court of equity will wrest property so acquired, not only from the perpetrator of the fraud, but from his children and from his children's children; or, as elsewhere said, from any person among whom he may have parceled out the fruits of his fraud." Martin v. Robinson, 67 Tex. 381, 3 S. W. 557.

[4] The trial court found that appellants and each of them had actual knowledge and notice of the fact that appellee's money had gone into the house, and, in fact, it was erected entirely out of her money, and that Reed had wrongfully used the same in violation of his agreement and his trust, and placed it on land then owned by him. There is no question of a bona fide purchaser without notice in this case. The only question is, Shall the appellants receive the fruits of this fraud and appropriate the property of appellee after notice of such fraud? It is contended by appellants that as the legal title was in another other than Reed, who it is asserted was only in possession of the land under an executory contract to purchase, therefore appellee could not enforce a lien

against the land or a trust therein by the fraudulent acts of Reed. The appellants cite a line of authorities which hold a mechanic's lien cannot be established against land held under executory contracts or by possession only for improvements placed thereon by persons claiming the benefit of the mechanic's lien statute. It appears upon an examination of the authorities most of them are based upon the wording of the statute, and we think also a distinction should be noted that, in those cases the parties claiming the right under such lien themselves placed the improvements on the land when they knew or should have known that the party having the improvements made was not in fact the legal owner of the land, or, in other words, was not such owner upon whose land the statute will impress a lien for improvements. In this case the appellee did not place the improvements upon the land, but it was placed there in violation of an agreement and an unlawful breach of a trust, and as we believe by actual fraud. Appellant Miller knew of this fraud when he took the land; knew the appellee's money had become part of the land itself, had entered into a fixture which could not be severed from the land, and that the land was thereby enhanced in value. He must, therefore, have known that while in the hands of Reed it was impressed with a trust to which appellee had the right to look for security, and that Reed held the land to the extent of the value of the house as trustee for her. Thus knowing, can the purchaser from Reed or from his vendors of the right to complete the contract ignore her equities, get the legal title to the land, and defeat her rights? We believe appellant should have given appellee an opportunity to protect her rights in Reed's equity of redemption, and that when the notes given by Reed were surrendered and canceled, and the land taken by such purchaser with notice, they did so charged with appellee's equities; that is, a trust estate in the land equal to the amount of appellee's money placed in the house by Reed. The right of appellee, it is true, was but a trust upon Reed's equity of redemption, yet she could not be defeated in that right by a transfer of both the legal title and Reed's equity to purchase to Miller. When he secured both, and they became merged or united into one in his hand, he also took the same with the trust charged thereon by Reed's unlawful acts. The appellee's rights, having attached before the conveyance of the land to Miller and before Reed surrendered the notes or his right to complete his purchase, cannot be defeated by the acts, dealings, and agreements of the appellants with each other, without consulting the appellee, or without her knowledge or consent. McDonald v. Miller, 90 Tex. 309, 39 S. W., opinion by Supreme Court on page 94; Huffman v. Mulkey, 78 Tex. 556, 14 S. W. 1029, 22 Am. St. Rep. 71; Silliman v. Gammage, 55 Tex. 365. In this state it has been held a purchaser who has contracted to purchase school lands, and who has not lived out the three years' occupancy, may execute a mortgage thereon, which creates such a lien as can be enforced against the land in the hands of a subsequent vendee of the mortgagor and under a contract of purchase from the state. This case, we think, presents a lien on the interest of Reed as strong as that on school land, in which the title does not pass out of the state but is subject to forfeiture for money, for nonpayment of interest or failure to occupy the land three years consecutively. Harwell v. Harbison, 43 Tex. Civ. App. 343, 95 S. W. 30; Clark v. Altizer, 145 S. W. 1041.

[5, 6] It is insisted the court was in error in decreeing a lien on the premises and ordering a sale to satisfy the charge fixed on the land as a trust. In this we think the trial court was correct. It is a general rule that fixtures, such as a house, become part of the realty upon which it is situated, and, as such, cannot be severed. There is nothing in the record which takes this case out of the rule. Had Miller been a bona fide purchaser, there could be no question but he would have held the house as part of the land, and appellee would have had to look to Reed personally for compensation. If the rules of equity have fastened a trust on the house which is part of the land upon which it is situated, then, as it cannot be severed therefrom, a court of equity, we think, will decree a lien on the land of which it is a part and direct a sale thereof in order to protect the interest of appellee. Atkinson v. Ward, 47 Ark. 533, 2 S. W. 77; Vivion v. Nicholson, 54 Tex. Civ. App. 43, 116 S. W. 388; Kennedy v. Baker, 59 Tex. 162; 3 Pomeroy's Eq. Juris. (3d Ed.) § 1051.

We find no error in the judgment, and therefore affirm the case.

### On Motion for Rehearing.

[7] The appellants ably and with much earnestness insist that the case was not properly disposed of by the opinion of this court on January 4, 1913. In view of the motion for rehearing, we deem it necessary to state the grounds of defense set up by the appellants in their answer upon which the case went to trial. The answer of O. F. Miller, E. W. H. Miller, H. J. O. Reed, and Frank B. Baxter consisted of a general denial, a plea that the money furnished to Reed by appellee was under an agreement that appellee should live in the house with said Reed, etc. A plea that the money so furnished was not in fact the money of appellee, and also that she knew where the house was in the fall of 1908, but in no way disaffirmed the location of the house until March 10, 1911, when suit was brought, and that she failed to use diligence in bringing said action, and also pleaded the two-year statute of limitation in bar of her action. The appellants nowhere alleged

that they had a superior lien or equities to that set up by appellee, or what their equities were in the land, when or from whom they purchased it, or what or how they paid for the same. They did not ask the court to adjust any equities between the parties.

The testimony shows that Reed bought the land in question in 1908, and that appellee bought her quarter in June, 1908. Reed sold his quarter in April, 1911, including the improvements. It appears that one David Fausch held this land as trustee for the Royal Land Company, of which C. F. Miller was the president. He testified Reed purchased this land from the Royal Land Company, and could not say whether he got deed or not. He had heard Reed did not build the house with his money, and it was intimated that his mother-in-law was furnishing the money. At the time he got the land from Baxter, Reed was in possession of it. C. F. Miller testified that Reed purchased the land from the Royal Land Company, like any one else under a contract. "That was the way we made those sales." The evidence is sufficient to support the court's finding that Reed had purchased the land and gone into possession of it under such contract. The parties made the following agreement, which is part of the record in this case: "It is agreed that the northeast quarter of section 15, block 3, of the Capitol Syndicate subdivision in Dallam county, Texas, was patented by the state of Texas to Abner Taylor, and that Abner Taylor conveyed same by warranty deed to the trustees of the Capitol Freehold Land & Investment Company, and by the trustees of said company it was conveyed by warranty deed to F. A. Baxter on the 26th day of March, 1908, deed filed for record on the 10th day of April, 1908, in Dallam county, Texas, and F. A. Baxter conveyed the same by warranty deed to David Fausch on the 1st day of January, 1909, which deed was filed for record on the 7th day of May, 1909, and that David Fausch conveyed the property by warranty deed to E. W. H. Miller on the 6th day of January, 1911, which deed was filed of record in Dallam county, Texas, on the 21st day of January, 1911, and that E. W. H. Miller conveyed the same by warranty deed to William Starch on the 7th day of November, 1911, which deed was filed for record in Dallam county, Texas, on the 27th day of December, 1911." There is nothing shown by the pleadings or the testimony as to the amount Reed agreed to pay for the land or its value. E. W. H. Miller does not show what he paid for the land or how he paid for it. We hold that appellants in this case should have filed their answer in the nature of a cross-bill, setting up the superiority of their equities, if there were such, to appellee's lien, and should have asked that the court compel the adjustment of the equitable claims of the respective parties. In the absence of such a plea or facts establishing the amount which Reed might have owed on the land and the amount paid by E. W. H. Miller for the land from the Royal Land Company, or from Fausch, the court could do no more than he did—that is, establish appellee's lien against the land. The appellants were brought into the suit for the purpose of adjusting their equities if they had any, and, having set up none in themselves, they sought only to defeat appellee's lien. If we understand the authorities cited by appellants, they are to the effect above stated. King v. Brown, 80 Tex. 276, 16 S. W. 39; Morrow v. Morgan, 48 Tex. 304; Silliman v. Gammage, 55 Tex. 365.

Appellants cite a great number of authorities in cases of trespass to try title, wherein it is said the rule is that the party claiming title under a junior lien before he can recover must tender to the one holding title under the prior lien the amount due or paid. See Pierce v. Moreman, 84 Tex. 596, 20 S. W. 821. In the instant case the record nowhere charges appellee with knowledge of the appellants' equities at the time of the suit. She brought appellants into the suit, simply alleging they claimed some interest in the land. Was she required to ascertain what the claims were before she brought her suit and to allege them? It occurs to us, if appellants had any equities, they should have set them up so the court could have properly adjusted same by its decree. In this case E. W. H. Miller, who appears to have purchased the land, does not allege that the debt of Reed to the Royal Land Company passed by the deed of Reed, or was assigned to him when he purchased the land. His right may be on the warranty so far as this record shows. He does not allege a subrogation, which, as we understand, he should have done. Boone v. Miller, 86 Tex. 74, 23 S. W. 574; McCammant v. Roberts, 87 Tex. 241, 27 S. W. 86; Perkins v. Sterne, 23 Tex. 563, 76 Am. Dec. 72.

If the appellant Miller, or the other appellants, sought to be subrogated to the lien retained by the vendor of Reed, then the appellants should have plainly alleged the facts which gave the right of subrogation, and should have asked for such relief in a cross-petition. Crow v. Fiddler, 3 Tex. Civ. App. 576, 23 S. W. 17; Wilkin v. Owens, 102 Tex. 197, 114 S. W. 104, 132 Am. St. Rep. 867; 37 Cyc. 309.

The motion for rehearing is overruled.