BABER v. HOUSTON NAT. EXCH. BANK. (No. 7754.)

(Court of Civil Appeals of Texas. Galveston. Nov. 26, 1919. Rehearing Denied Dec. 18, 1919.)

1. EXECUTORS AND ADMINISTRATORS ⬬525 — JUDGMENT IN SUIT AGAINST FOREIGN EXECUTOR NOT BINDING ON ESTATE.

Judgment in a suit against a foreign executor brought in a court of Texas is not binding on the estate, as an executor or administrator can neither sue nor be sued outside of the state in which he receives appointment.

2. JUDGMENT ⬬670—DOCTRINE OF RES ADJUDICATA APPLICABLE ONLY AGAINST PARTY IN SAME CAPACITY.

It is essential to the application of the principle of res adjudicata, not only that the person sought to be bound by the former judgment should have been a party, but he must have been a party in the same capacity in which he appears in the suit in which the former judgment is pleaded as a bar.

3. EXECUTORS AND ADMINISTRATORS ⬬525— CONCLUSIVENESS AGAINST DIVORCED HUSBAND'S FOREIGN EXECUTOR OF JUDGMENT IN FAVOR OF WIFE SUING BANK FOR FUND, AND NOTIFYING EXECUTOR.

Judgment in favor of divorced wife, in her suit in Texas against a bank on a cashier's check given for half the price of land sold by her husband, half of which belonged to her, *held* conclusive upon the husband's executor, ap-

pointed in another state, who had been given legal notice of the divorced wife's claim to the fund, and had had full knowledge of all facts and opportunity to take necessary steps to assert any right the husband had in the fund.

4. BANKS AND BANKING ☞154(1) — BANK SUED BY DIVORCED WIFE ON CASHIER'S CHECK INDORSED TO HUSBAND AS PRICE OF LAND OWNED BY WIFE NOT UNDER OBLIGATION TO HUSBAND'S EXECUTOR TO SET UP LIMITATIONS.

Where after divorce a husband sold land in which his former wife had a half interest as community property, and thereafter the wife sued a bank on its cashier's check indorsed to the husband, and representing half the price of the land, the bank was under no obligation to the foreign executor of the husband's estate, or to the estate itself, to set up limitations against the wife's claim, the executor and estate, having been represented by an attorney selected by him, having been fully informed of all facts, and having had opportunity to qualify as executor in Texas and defend the suit.

5. EXECUTORS AND ADMINISTRATORS ☞114— ESTATE MAY BE ESTOPPED BY REPRESENTATIVE'S ACTS OR OMISSIONS.

An executor or administrator by his acts or omissions may raise an estoppel against the estate.

6. INTERPLEADER ☞10 — INTERPLEADER BY BANK SUED ON CASHIER'S CHECK, AS BETWEEN DIVORCED WIFE AND FOREIGN EXECUTOR OF HUSBAND.

A bank, whose cashier's check for half the price of land sold by a divorced husband when belonging half to the wife as community property was sued on by the wife after the husband's death, had the right, after it had been enjoined from paying the check to the husband's foreign executor, to place the money in the custody of the court, and notify the executor to appear and assert his claim, and thus relieve itself of further liability to the executor if the court found the fund belonged to the wife, the general rule that a debtor cannot sustain bill to interplead his creditor and an outsider without other claim than equity against the creditor not being applicable, and the claims of the wife and the husband's estate not being so independent as to defeat the bank's right of interpleader.

Error from District Court, Harris County; K. C. Barkley, Special Judge.

Suit by John F. Baber as temporary administrator of the estate of James E. Galbraith, deceased, against the Houston National Exchange Bank. Judgment for defendant, and plaintiff brings error. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for plaintiff in error.

Otto Taub and E. P. & Otis K. Hamblen, all of Houston, for defendant in error.

PLEASANTS, C. J. This suit was brought by John F. Baber as temporary administrator of the estate of James E. Galbraith, deceased, to recover of the defendant, the Houston National Exchange Bank, the sum of $7,936.32, with interest thereon from September 14, 1912, at the rate of 6 per cent. per annum.

The petition declares upon an instrument in writing, which it is alleged was executed and delivered by the defendant to Henry Fox, Jr., and was for a valuable consideration transferred and indorsed by the said Fox to James E. Galbraith, deceased, and was owned and held by the said Galbraith at the time of his death. This instrument is as follows:

"The Houston National Exchange Bank.

"Houston, Texas, Sept. 14, 1912.
"No. 12261. Pay to the order of Henry S. Fox, Jr., $7,936.32, seventy-nine hundred thirty-six 32/100 dollars.
"Cashier's Check.
"J. W. Hertford, Cashier."
Indorsed:
"Pay to order of J. E. Galbraith.
"Henry S. Fox, Jr."

The defendant answered by general demurrer and general denial and by several special pleas, the nature of which will be hereinafter shown.

Upon the trial the following facts were agreed to be true:

Galbraith and wife, while residents of Texas, acquired as community property a tract of land in Harris county, and thereafter removed to the state of New York, where they were divorced without disposition having been made of the Texas land. After the divorce, Galbraith sold the land to Street and Graves, who purchased for value and without notice of the former's wife's right therein. One half of the consideration was paid by them to Galbraith in cash, and the other half was evidenced by their vendor lien notes in his favor, which he placed with defendant in error bank to be collected when due. The notes were paid at maturity to the bank, and Galbraith released the lien on the land. The money with which the notes were paid remained on deposit in said bank to the credit of Galbraith, being the only deposit and credit in his favor in said bank, and thus representing one-half of the consideration paid for the land, and so remained until the deposit account was closed by the bank issuing for the amount a cashier's check that is the basis of the present suit. Galbraith died and plaintiff in error qualified as executor of his estate in New York and by virtue thereof came into possession of the cashier's check in question. About this time Galbraith's former wife filed suit against Street and Graves in the district court of Harris county, seeking recovery of one-half of the aforementioned land by reason of it having been community property of the marriage, and with such suit pending Street and Graves obtained in the

district court of said county an injunction against said bank, prohibiting it from paying the fund represented by the cashier's check to Galbraith's executor upon the ground that it represented one-half of the consideration paid by them for the land, and if the money was withdrawn from the state they would have no recourse under Galbraith's warranty if the former wife recovered one-half the land. Such injunction being in force, the executor sent the check to the bank for collection, but it was not paid because of the injunction, and such reason for nonpayment was noted on the face of the check, and it was returned by the bank to the executor. Upon receiving same and learning that payment had been stopped by injunction, the executor, through advice of his New York lawyer, sent the check to Mr. C. R. Wharton, a practicing attorney of the Harris county bar, and employed him to represent the executor in the collection of the check, which check thereafter remained and now is in the possession of said Wharton for such purpose.

Mr. Wharton, upon receiving the check, endeavored to have the money released from the injunction, but was unable to do so. With matters in this situation, Mrs. Galbraith made the bank a party to her suit against Street and Graves, alleging the fund to be one-half the purchase price for land that was community of her marriage with Galbraith and equally owned by them after the divorce, and praying recovery thereof if she failed in her suit for one-half of the land. Street and Graves also sought recovery of the fund in the event Mrs. Galbraith recovered half the land, upon the ground that Galbraith's warranty to them would thus fail to that extent. Upon the bank being made a party to the suit, Mr. Wharton so representing the executor and holding the check for collection, called upon the bank orally and in writing to plead limitation against Mrs. Galbraith's claim for the fund, but the bank replied that it was merely stakeholder thereof, and would place the fund in the registry of the court to abide the court's decision with respect thereto, and obtained from said Wharton the names of the executor and beneficiaries under the will of Galbraith for the purpose of making them parties to the suit, and thereupon filed its plea of stakeholder, placed the money in the registry of the court, and cited such executor and beneficiaries by publication in compliance with the provisions of law for citation by publication, and upon the suggestion to the court by the bank's attorney that Mr. Wharton represented the executor in the collection of the check, Mr. Wharton was appointed attorney ad litem to represent the parties cited by publication, and filed answer for them, setting up limitation and other pleas.

Baber, through his New York attorney, was advised by said Wharton of the several claims made against said fund, as above mentioned, in said suit before trial of the case, and of the fact that he and said beneficiaries had been cited by publication, and that said Wharton had received such appointment, and through his New York attorney was advised by said Wharton to make no voluntary appearance in said cause as executor, and in accordance therewith he did not do so. But in this connection said executor, Baber, by reason of his independent employment of said Wharton through his New York attorney, looked to said Wharton to represent him as such executor in the manner deemed advisable by said Wharton in the collection of such draft, and to account to him for same if collected.

Upon trial of the former suit, judgment was rendered in favor of Street and Graves for the land, and the fund represented by the cashier's check was awarded to Mrs. Galbraith, less court costs that the clerk was decreed to retain, and less an attorney fee to Mr. Wharton under such appointment, which he collected, and less an attorney fee to the bank as stakeholder, which its attorney collected, and less the sum of about $800 in favor of the Galbraith estate in response to pleading and proof presented by Mr. Wharton on account of certain expenses incurred by Galbraith for the benefit of the community estate between himself and Mrs. Galbraith with respect to said land during his ownership thereof (said Wharton having represented him during his lifetime with respect to said property). The said sum of $800 was collected and receipted for by Mr. Wharton as attorney ad litem, of which Baber was advised and made no objection.

After collecting said sum, Mr. Wharton appealed the case, and expended certain portions thereof as expenses of the appeal, and paid the balance in accordance with the judgment of the Court of Civil Appeals, of all of which Baber was advised after such amounts were paid, and made no objection. During said trial, Mr. Wharton had possession of the check, but declined to introduce same in evidence. It was, however, introduced in evidence by counsel for Mrs. Galbraith. The bank undertook in the trial and appellate courts to have the check declared canceled and of no further force and effect, but without success. The opinion of this court in that case is reported under the style of Baber v. Galbraith in 186 S. W. 345.

After the termination of that litigation, Mr. Wharton advised Baber, through his New York attorney, to take out ancillary administration proceedings in Harris county and to file suit on the check against the bank, and in accordance with such advice Baber qualified under administration pro-

ceedings in said county, and filed this suit against the bank on said check through Mr. Wharton, his attorney.

When the former judgment had become final, Mrs. Galbraith collected from the clerk of the trial court the amount so awarded her, and since the institution of the present suit she has died and her estate is insolvent.

Mr. Wharton testified on the trial of this case that during the pendency of the former suit he frequently received letters from some of the devisees that they knew he was representing them as attorney ad litem through information probably given them by the administrator, Baber.

The special pleas of defendant were, in substance:

(1) The injunction as reason for not paying the check when presented.

(2) The paying of the money into the registry of the court, making of the executor and beneficiaries parties, citing them by publication, appointment of C. R. Wharton to represent them, his qualifying and acting as such, trial of the case, judgment decreeing how the money should be paid (which was done accordingly) and releasing the bank from further liability in the premises, as: (a) Payment of its obligation under the cashier's check; (b) in bar of any rights or claims the executor and beneficiaries may have had; and (c) res adjudicata of the claim asserted by plaintiff.

(3) Actual notice to the executor, as well as constructive notice, of the claim asserted by Mrs. Galbraith to the fund in said suit, with full opportunity to defend against same and assert his rights in a legal manner, and if there was a failure in that respect it was of his own making; that to permit him recovery now under the facts and circumstances appearing would work a great injustice upon the bank, and by reason thereof he waived his right, and is estopped to maintain such claim in this suit.

(4) The then existing independent employment of Mr. Wharton by the executor to collect such check and to take such steps and exercise such discretion in the premises as his judgment might dictate; the activities of said Wharton under that employment, keeping the executor advised as to the claims made to said fund and status of the suit in which same was involved; his appointment to represent the parties cited by publication because of such private employment; his advising the executor against appearing in the suit; his efforts to obtain the release of said money and to have the bank make certain pleas, and answering and setting up such pleas under his appointment; his collecting and using the amount awarded the Galbraith estate in appealing from the trial court's judgment; all of which was with the knowledge and acquiescence of the executor;

and, if the executor failed through design or otherwise, to properly qualify and legally assert his claim (a matter over which defendant had no control), he waived such right, and is estopped to assert same, as his success in the present suit would cause the bank to pay the amount twice, when it had paid the money into court and had given plaintiff full opportunity and notice to protect his rights.

(5) The collection by Mr. Wharton, with the knowledge and acquiescence of plaintiff, of the $800 awarded to the Galbraith estate by decree of the court and using same for plaintiff's benefit, which plaintiff approved, as constituting an acceptance under the judgment, rendering same binding upon him, and estopping him now to question same.

(6) That the fund represented by the cashier's check was the property of Mrs. Galbraith, held in trust for her, as being one-half of the purchase price for land that was equally owned by her and her former husband and sold by him, he collecting his one-half of such purchase price, and accordingly she was entitled to the half represented by such check, and plaintiff, as executor of the Galbraith estate, had no claim thereto.

(7) That after the judgment in the former suit, Mrs. Galbraith collected the fund so represented by the check and paid into court by the bank, less the items of cost, attorney's fees, and amount awarded the Galbraith estate, hereinbefore noted; that she is dead and her estate insolvent, and the bank would have no protection against a double payment if plaintiff recovered, and by reason of all the facts and circumstances detailed the plaintiff is estopped to maintain his claim.

(8) That at the time of the institution of the present suit, less than two years had elapsed since the rendition of judgment in the former suit, with all parties to the former suit accessible, and plaintiff's remedy was by bill of review in the former suit, which he should have pursued, but failed to do so, and same was pleaded in bar of plaintiff's claim in this suit. And

(9) Cross-action by defendant to have the cashier's check declared canceled and of no further force and effect.

The trial in the court below without a jury resulted in a judgment for the defendant.

[1, 2] The contention of appellant, presented with much force and learning under his first four assignments of error, is that the judgment in the former suit affords no protection to appellee against appellant's demand in this suit, because he was not properly before the court in the former suit, and is therefore in no way bound or estopped by the judgment therein rendered. In support of this contention he invokes the well-established general rules that an administrator can neither sue nor be sued outside of the state in which he receives his appointment as the

representative of his decedent's estate, and that it is essential to the application of the principle of res adjudicata, not only that the person sought to be bound by the former judgment should have been a party thereto, but must have been a party in the same capacity in which he appears in the suit in which the former judgment is pleaded as a bar.

[3] It is undoubtedly true that, generally speaking, a judgment in a suit by or against a foreign executor, brought in a court of this state, would not be binding upon the estate, but it does not follow from this that when a court of this state, in a suit between parties who have properly invoked its jurisdiction, acquires jurisdiction of the fund in controversy between the parties the judgment of the court disposing of the fund is not binding upon all persons, interested in or claiming the fund, who are given proper notice of the suit and have full opportunity to appear and assert their claims.

The agreed facts in this case show, not only that appellant was given legal notice of the claim of Mrs. Galbraith to the fund, and of the constraint which impelled appellee to place the fund in the custody of the court, but that he had full and actual knowledge of all the facts, and full and ample opportunity to take the steps necessary to assert in said suit any right which the estate he represented had in the fund in controversy. Upon the agreed facts in this case the fund in question belonged to Mrs. Galbraith, and she was entitled to sue for and recover it from the bank. This was decided by this court on the appeal from the judgment in the former suit in a very able and learned opinion by former Justice McMeans. A writ of error from that decision was refused by the Supreme Court, and the question of Mrs. Galbraith's right to sue the bank and recover the fund is concluded by that decision.

[4] It may be, as contended by appellant, that her right to recover the fund could have been defeated by a plea of limitation, and that such plea could have been made by the bank, but we cannot agree to the proposition that the bank was under the obligation to the appellant or the Galbraith estate to make such plea. He was represented by an attorney selected by him, was fully informed of all of the facts in regard to the suit, and had ample opportunity to qualify as executor in this state and defend the suit in his representative capacity. Knowing all these facts, he, upon the advice of his attorney, failed to take the step necessary to assert the claims of his estate to the fund, and now seeks to hold the bank responsible for his dereliction. We know of no rule of law nor principle of equity which required the bank that held the fund, which, as before stated, was subject in its hands to Mrs. Galbraith's claim,

to assume the burden of asserting claims for the Galbraith estate which by its administrator it refused to assert for itself.

Chief Justice Cooley rendered the opinion in Bank v. Burrows, 34 Mich. 153, a case quite similar in the main points to the present one. A party, having made an assignment supposedly of all his property to a trustee for his creditors, deposited a large sum in the bank in his wife's name. The trustee sued the bank for the fund upon the ground it was in reality the husband's and passed to him as trustee. The wife was in a distant state. The bank merely advised her by letter of the suit. She employed an attorney in the city where the bank was situated, and also had an agent there to look after the matter for her. She was not made a party to the suit, and upon trial of the case judgment was rendered against the bank and promptly paid by it. She then sued the bank for the fund, but the court held against her.

Michie on Banks and Banking, vol. 2, § 1315, sums up the points in Judge Cooley's opinion, and announces them as the correct rules of law in that regard, as follows:

"A bank sued by an adverse claimant of money deposited with it is under no obligation, after having given the depositor timely notice of the proceedings and of the facts on which they are based, to make a strenuous and persistent defense, or to resort to any measures to prevent the cause being brought to trial according to the regular course of the court. The implied obligation of a bank to its depositor to protect the interest of the latter does not go beyond the requirement of good faith in refusing to surrender the moneys confided to its custody, except upon a lawful demand lawfully established. Where the depositor and her attorney had ample notice of the suit against the bank to recover the deposit and her agent was present at the trial, failure of the bank to notify such depositor's attorney of the time of the trial, such notice not having been requested, is no breach of duty or evidence of negligence on the part of the bank. An omission to apply for a continuance until such time as the depositor can appear and take part in the trial is, under the circumstances set out above, not negligence on the part of the bank. Nor is it the duty of the bank to move for a new trial upon facts communicated to it after the verdict; the burden of defense being upon the depositor."

[5] It is well settled that an executor or administrator may, by his acts or omissions, raise an estoppel against his estate. Thomas v. Brooks, 6 Tex. 371; Vivion v. Nicholson, 54 Tex. Civ. App. 43, 116 S. W. 386.

[6] We cannot agree with appellant in his further contention that the bank did not have the right, after it had been enjoined from paying the check to appellant, to place the money in the custody of the court, and notify appellant to appear and assert his claim to the fund, and thus relieve itself of further

liability to appellant in event the court should find that the fund belonged to Mrs. Galbraith. We do not think that the general rule that a debtor cannot sustain a bill to interplead his creditor and an outsider, who has no other claim than an equity against the creditor, can be applied to the facts of this case. Under the rules of equity jurisdiction as laid down in the earlier decisions there were four prerequisites to the equitable remedy of interpleader: (1) The same thing, debt, or duty, must be claimed by both parties who are asked to be made to interplead; (2) their adverse claims must be dependent or derived from a common source; (3) the party asking the remedy must have no interest in the subject-matter of the suit; and (4) such party must have incurred no independent liability to either of the claimants.

In the later cases the necessity for the existence of the second prerequisite above stated is questioned, and the rule has been frequently relaxed both in England and this country.

Mr. Pomeroy, in a note to section 1324 of his fourth volume on Equity Jurisprudence, in speaking of the fact that the remedy is limited to those cases where there is privity of title between the claimants, says:

"It is a manifest imperfection of the equity jurisdiction that it should be so limited. A person may be, and is, exposed to danger, vexation, and loss of conflicting independent claims to the same thing, as well as from claims which are dependent; and there is certainly nothing in the nature of the remedy which need prevent it from being extended to both classes of demands."

If it were necessary for us to decide the question, we would be inclined to the views expressed by Mr. Pomeroy, and hold that the remedy was available as well when the conflicting claims were independent as when there was privity of title. We do not think the claims of Mrs. Galbraith and the Galbraith estate are so independent of each other as to defeat the bank's right of interpleader under the rule which requires that such claims must be dependent or derived from common source. The cashier's check which was issued by the bank, and upon which appellant's claim is founded, in no way affected Mrs. Galbraith's interest or right in the fund which had been paid into the bank by the purchasers of her land, and by the issuance and delivery of the check the bank did not become bound to James E. Galbraith or his estate to pay the fund to him if it in fact belonged to Mrs. Galbraith. As between Galbraith and the bank (the question of innocent purchaser of a negotiable instrument is not in the case) the check was not an independent obligation to pay absolutely and at all events. As held in our opin-

ion in the former suit, Mrs. Galbraith could trace and recover the fund wherever found, and the bank was bound to pay it to her, notwithstanding it had issued its check therefor to her husband. If the bank after notice of Mrs. Galbraith's claim could not pay the check to the executor of James E. Galbraith without making itself liable to her, it would be indeed a harsh rule which would deny it the right to the remedy of interpleader. McGinn v. Bank, 178 Mo. App. 347, 166 S. W. 345.

Our conclusion is that the rights or titles of the two claimants of the money or fund in controversy were not so distinct and independent of each other as to prevent the bank from invoking the remedy of interpleader.

What we have said is conclusive of appellant's right to a reversal of the judgment. It follows that the judgment should be affirmed; and it has been so ordered.

Affirmed.