### WELLS, STILLWELL & SPEARS v. DUPUY et al.  (No. 1918.)

(Court of Civil Appeals of Texas. El Paso. Dec. 9, 1926. Rehearing Denied Jan. 6, 1927.)

1. **Boundaries ⚖️35(3)—In trespass to try title, excluding surveyor's testimony that he acted as court's engineer in establishing lines held not error.**

In suit of trespass to try title, excluding testimony of surveyor, who made survey and map of premises in suit, that he was appointed by court and not in employ of either party, *held* not error because it added no weight to his testimony.

2. **Boundaries ⚖️41—Refusing special charge that junior survey not referring to survey involved was incompetent to identify lines of survey in suit held not error (Rev. St. 1925, art. 3721).**

In suit of trespass to try title, refusing special charge that plat or field notes of junior survey not referring to survey involved in suit were incompetent to identify lines of survey in suit *held* not error, under Rev. St. 1925, art. 3721, making certified copy of record of survey admissible.

3. **Public lands ⚖️175(2)—Maps and plats made by deputy surveyors are presumed made from field notes by actual surveys.**

In absence of evidence to contrary, presumption is that maps and plats made by deputy surveyors were made from field notes by actual surveys on ground.

4. **Appeal and error ⚖️731(1)—Assignments and propositions that jury's verdict and findings are contrary to law and evidence held too general and not to present fundamental error.**

Assignments and propositions that verdict and findings of jury are contrary to law and evidence and not sustainable on merits *held* too general to be considered and not to present fundamental error.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Trespass to try title brought by H. E. Dupuy and another against Wells, Stillwell & Spears. From the judgment, defendants appeal. Affirmed.

R. F. Burges and W. S. Berkshire, both of El Paso, for appellants.

R. M. Reed, C. W. Croom, and McBroom & Scott, all of El Paso, for appellees.

WALTHALL, J. This suit is in trespass to try title to certain lands described, brought by Dupuy and Anderson against Wells, Stillwell & Spears, and alleged to be parts of surveys 17 and 19, in block A, Texas & Pacific Railway Company lands, and lying within the fenced inclosure of defendants in Hudspeth county, and describing each of said parts by metes and bounds; the issue presented being that the fenced inclosure of defendants extended beyond the true northeast line of survey No. 110½ in the name of Anna Mason, and included a portion of surveys 17 and 19, block A, Texas & Pacific Railway Company lands. By agreement of both parties the case was transferred from Hudspeth county to El Paso county for trial.

Under sufficient pleadings of both plaintiffs and defendants, the cause proceeded to trial in El Paso county, before a jury, and, in addition to the questions of limitations presented by defendants, involved the question of the true location of the northeasterly line of the Anna Mason survey 110½ as originally located by Surveyor Joseph A. Tivey in September, 1858.

It was admitted by both parties that the record title to the Anna Mason survey 110½ was vested in the defendants; that the record title to the Texas & Pacific Railway Company's surveys 17 and 19, block A, was vested in the plaintiff Anderson, subject to the establishment by defendants of title under the five and ten years statutes of limitation to any portion thereof. It was admitted that the Texas & Pacific Railway Company surveys were located subsequent to the location of the Anna Mason survey by Tivey and called for the northeast boundary line of the Anna Mason survey 110½, and that the true northeast line of the Anna Mason survey 110½ determined the issues between the parties, subject to the issues of limitation.

The court instructed the jury that in determining the true northeastern boundary line of survey 110½ they would search for the footsteps of and follow the actual survey of Tivey as it was made.

On special issues submitted the jury found:

(1) The northeastern boundary line of survey 110½, as surveyed on the ground by J. A. Tivey, "is coincident with, or south or southwest, of

the northeastern boundary of said survey as located and marked by W. L. Rider, and delineated on the map of the said Rider introduced in evidence."

To questions 2 and 3 the jury made no answer. "(4) Do you find from a preponderance of the evidence that the defendants and John T. McElroy, either alone or together, have had peaceable and adverse possession of the land described in plaintiffs' petition, inclosed by a fence, cultivating, using and enjoying the same for any ten consecutive years preceding September 12, 1924?" To which the jury answered, "No."

The court entered judgment in accordance with the verdict, and defendants present this appeal.

### Opinion.

[1] On the trial R. E. Hardaway was called as a witness for appellants. Hardaway had testified that he was a civil engineer, had made the surveys on the ground of the lands in controversy and identified a map he had previously made indicating the result of his work. He testified that at the time he made the survey and map in 1914, neither he nor those engaged with him in the work had any interest in the establishment of the lines shown in his survey and map in one location rather than another, that they had no interest whatever except to establish the lines correctly, then testified more specifically as to the lines he was endeavoring to establish. Counsel for appellants then offered to show by the witness the circumstances and what caused the witness to make that survey and map at that time and that in making the survey and map the witness was not in the employ of either or any of the parties to the suit then pending and for which the survey and map were made. Had the witness been permitted to answer the questions submitted to him, he would have testified, substantially, that in making the survey and map he was appointed as the court's engineer to establish the Tivey lines; that as the court's engineer he tried to establish the lines, "just as Tivey would have established them," that is, with no other consideration than those which actuated him (Tivey) or any other surveyor establishing original lines; that in making the survey and map he considered that he was in the employ of the court appointing him. The court refused to hear the evidence of the witness on objection of appellees on the ground that the evidence offered was irrelevant, incompetent, immaterial, and relates to transactions wholly between other parties; that the evidence is greatly prejudicial to appellees in the case then being tried, in that it conveys to the minds of the jury the idea that the testimony offered is entitled to more credence or weight, and is an attempt by appellants to corroborate their own witness who had not been remotely impeached.

We have concluded the court was not in error in excluding the evidence.

The circumstances under which, or what caused the witness to make the survey or map, were not issues in the case; nor was it an issue as to whether the witness was in the employ of either or any of the parties in the suit in which the survey and map were made. The survey and map made by the witness were each in evidence, and as said by the Supreme Court in McAninch v. Freeman, 69 Tex. 445, 4 S. W. 369, the survey and map made by one appointed by the court were entitled to no more weight than a survey and map made by a witness who was not appointed by the court. That is, the appointment of the witness by the court to make the survey and map would not, solely, by reason of the appointment, add weight to the consideration to be given by the jury to the survey and map made by the witness.

The excluded evidence did not tend to prove or disprove any material issue in the case, and it could not be reversible error to exclude it.

[2, 3] The court refused to submit to the jury a requested special charge to the effect that the plat or field notes of a junior survey making no reference to the survey involved in this suit was not competent to identify the lines of the survey in this suit. The proposition is based on the refusal of the court to give the charge.

The survey involved in the suit, and to which the special charge referred, was the original survey made by Tivey in 1858, and other surveyors in originally locating surveys numbered 52 to 114, successively, and each by calls consecutively tied to each preceding section at least down as far as 127, the original and true location of survey 110½ being the point at issue in this suit. The plat or field notes of the junior survey referred to in the special charge is the plat and field notes made by George Villars in 1860 and 1861, in locating surveys 176, 177, 178, 182, and 184, and the field notes made by Anson Mills of surveys numbered 115 to 143, made at a later date to that of 110½.

The trial court instructed the jury that in determining the true northeastern boundary line of survey No. 110½ they would search for the footsteps of the Surveyor Tivey, and how the jury would be guided in finding that line, and that in doing so the jury would follow the actual survey of Tivey. Then the court in question No. 1 asked the jury whether they found the northeastern boundary line of No. 110½, as surveyed on the ground by Tivey, is coincident with, or south or southwest of the northeastern boundary of said survey as located and marked by Surveyor Rider and delineated on his map used in evidence. To that question the jury answered, "No."

Without quoting here at length the several contentions made by appellants and appellees, they are substantially as follows:

Appellants insist that such maps and field notes as are indicated in the requested charge, of subsequent and junior surveys made by another and different surveyor from the one who located the survey in controversy, and which subsequent surveys made no call for the field notes of the survey in controversy or any reference thereto but are made independent of the field notes originally locating the survey in controversy, are not to be considered in fixing the boundaries of the survey in controversy, are irrelevant, and for the further reason that the evidence introduced and relied upon differs materially from the field notes of the subsequent and junior survey, and from the evidence introduced, cannot be reconciled with the natural objects called for in such junior survey. Appellants reason that the use made of such junior surveys would necessarily be to vary the calls in the field notes of the senior or locating survey and locate the survey independent of the footsteps of the surveyor in making the original location.

Appellees made the contention that the court was not in error in refusing the requested charge, because: First, all of the junior surveys were introduced in evidence on the trial without objections on the part of appellants, and that any question as to their admissibility was thereby waived and could not be cured by the submitted charge; second, because a junior survey is admissible if it has a tendency to identify and fix on the ground a disputed boundary line or corner where it is apparent that the junior survey was made by a surveyor in position to know the corners of the surveys which are being located; third, because the statements of the deceased surveyor as to a corner or line of old surveys or grants are admissible provided he was in a position to know said original lines and corners.

It is shown by the record that surveys 52 and 114, inclusive, were made by Tivey between September 12, 1858, and September 19, 1858. Surveys from 115 to 143 were made by Mills beginning December 18, 1858, and ending December 24, 1858. The bearing trees called for in the lower corner of 114 by Tivey are also called for by Mills as the beginning corner of 115, reciting that he began at the lower corner of 114 made by Tivey. Both Tivey and Mills were Deputy Surveyors at the time they made the above surveys for Maverick, and their maps and field notes are of record in the surveyor's office of which they were deputies.

Witness Rider testified that he also surveyed 127 in which he (apparently Mills) calls for Fort Quitman; said there are quite a large number of ruins, or old fort buildings there to-day; said there is a ranch house right at the foot of Fort Quitman, a part of the Dave Gill ranch; said he "went down to 130 and surveyed that, that is the survey that shows the pronounced curve by Mills. From those natural objects, Fort Quitman and all, I was able to fix the river lines running up and down." The evidence found in the record shows, we think, that all of the maps and plats used in evidence, and to which the objection goes, were made by the several deputy surveyors and made from the field notes by actual surveys made on the ground, and the field notes duly recorded. There is no suggestion to the contrary, and the presumption follows that they were so made. State et al. v. Dayton Lumber Co. (Tex. Civ. App.) 159 S. W. 391, and cases cited.

The junior surveys of Mills and Villars, so far as the record shows, were read in evidence without objection made at the time. However, without discussing the effect of the failure to object to the use of the maps and field notes at the time, we think they were admissible under article 3721, Revised Civil Statutes 1925, formerly article 3695. The article provides for the record of each survey with an accompanying plat, whether private or official, and makes a certified copy of each record, evidence in any court in the state. The above statute states a rule of evidence as to surveys.

It does not by its terms make the admissibility as evidence, of the plat or field notes of a junior survey, made by a surveyor different from the original survey, to depend upon a call for the original or locating field notes, or reference thereto; nor does the statute by its terms exclude the plat and field notes of the junior or subsequent survey because made subsequent in time to the original or locating field notes. We think the Mills surveys, under the facts shown, are continuous of the surveys made by Tivey, and the field notes and plat admissible in evidence.

The purpose of a junior or subsequent survey is to find the true location of the land as originally located on the ground, and to do so the subsequent survey, as said by the trial court in the charge, should search for the footsteps of the surveyor originally locating the survey. It becomes an issue of fact to be determined by the jury as to whether the subsequent survey locates the corners and lines as located by the original surveyor.

We think the court was not in error in refusing to give the requested special charge.

[4] Appellants' assignments and propositions 3 and 4, are too general to justify consideration, and they do not present fundamental error. Mobley v. Robertson et al. (Tex. Civ. App.) 266 S. W. 516, and cases cited. Said assignments and propositions are that the verdict and findings of the jury are contrary to the law and the evidence

and if same were considered upon their merits they could not be sustained.

The jury found against appellants on their plea of ownership under the statute of limitation of any ten consecutive years preceding September 12, 1924. We have carefully reviewed the evidence on the issue. It would serve no purpose to reproduce the evidence. We think the evidence sufficient to sustain the jury's finding on the plea.

Finding no reversible error, the case is affirmed.