JOHN A. CLAWSON ET AL. v. J. L. WILLIAMS, EXECUTOR, ET AL.

Decided November 22, 1901.

1.—Trespass to Try Title—Conflicting Locations—Burden of Proof.

Where, in a case of conflicting locations, plaintiff sues for land which is in possession of the defendant, the burden is on him to show by competent evidence that the land in controversy is within the boundaries described in the grant under which he claims. See evidence held not to show a conflict of locations.

2.—Same—Appeal—Cross-Assignments Necessary.

Where plaintiff obtained judgment establishing the location of his survey as including the land in controversy, and on appeal by the defendants the judg-

ment was reversed as unsupported by the evidence, plaintiff was not entitled, even though the evidence warranted it, to have a judgment establishing the location of his survey so as to include land claimed by his coappellees where he had not appealed nor filed cross-assignments against them.

**3.—Appeal—Abandonment—Assignment of Error.**

Failure to file assignments of error constitutes an abandonment of an appeal that has been taken by the giving of due notice thereof.

Appeal from Harris.  Tried below before Hon. Wm. H. Wilson.

*E. B. Moody,* for appellants.

*J. C. Baldwin, D. F. Rowe, T. C. Rowe, C. E. Johnson,* and *Ross & Wood,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This suit was instituted by appellee J. L. Willams, executor of the estate of Larissa Williams, deceased, and Emily Pudor, joined by her husband O. M. Pudor, against the appellants, John A. Clawson, Joe Stasney, Joe Volcik, Jr., Stepan Volcik, W. R. Hollingsworth, and C. H. Kinney, and a large number of other defendants, none of whom have appealed.  The suit was in the form of an action of trespass to try title to a tract of land patented to Addison Weld by virtue of certificate No. 183, and alleged in plaintiffs' petition to be described in the patent as follows-:

"Six hundred and forty acres of land, more or less, in Harris County, Texas, between the waters of Cedar Bayou and San Jacinto River, west of and adjoining a survey made for land scrip No. 93, and about nine miles from Lynchburg.  Beginning at the N. W. corner of land scrip 93, a stake and mound in the prairie in the W. boundary line of Scott's survey; thence S. 2360 vs. with the W. boundary line of a survey made for land scrip 93, to a stake and mound in the prairie in the N. boundary line of a survey made for land scrip No. 351; thence W. 1190 vs. with said line to its N. W. corner, a stake and mound in the prairie; then S. 920 varas with the W. boundary line of said survey to a stake; thence W. 200 varas to a stake; thence N. 3338 varas to a stake and mound in the prairie; thence E. 1385 varas to a stake and mound in the W. boundary line of Scott's league; thence S. 10 degrees E. 180 varas with said Scott's line to the place of beginning, being abstract No. 816, patent No. 284."

Plaintiffs further alleged that as originally surveyed plaintiffs were, as a matter of fact, the owners of more than 640 acres of land; that while the patent calls for 2540 varas, being the entire east boundary line of said survey, yet as a matter of fact said east boundary line of said survey is 3158 varas, and that the west boundary line of said survey is in fact 4071 varas, and that the north and south boundary lines of said survey are much greater than called for in said patent.  They then alleged the location of the northeast corner of the Reuben White league (an old survey), and alleged that their east boundary line is located

4070 varas east of the east line of said R. White league; that their west boundary line is located 1268 varas east of said east line of the R. White league, and that their north boundary line is located 2951 varas north of the northeast corner of the said R. White league, and prayed for the establishment of the true location of the boundary lines of said A. Weld survey No. 183.

Appellants answered separately, disclaiming as to any land sued for by plaintiffs, except so much thereof, if any, as might be included within the metes and bounds set forth in their respective answers, and as to the lands described in their answers they pleaded "not guilty." The lands claimed by appellant C. H. Kinney are situated in W. C. R. R. Company's survey No. 2, which is located in the southwest corner of the James Scott abandoned league survey. The lands claimed by the other appellants are all situated in the S. T. Champney survey No. 93.

The real controversy was the location of the Addison Weld No. 183 survey. The case was tried by the court without a jury and a judgment rendered whereby the west boundary line of plaintiff's survey was placed 2688 varas east of the northeast corner of the R. White, and their north boundary line was placed 1358 8-10 varas north of said northeast corner. The metes for all of its sides are the same as called for in the patent. This location places the west line of the survey only 65 varas west of the southwest corner of the James Scott, and places the north line 358 8-10 varas north of the southwest corner of said Scott, and places its east line 1320 varas east of said southwest corner of the James Scott, the effect of which is that, as located by this judgment, the Addison Weld No. 183 survey, belonging to plaintiffs, covers practically the entire S. T. Champney survey claimed by appellants, which is located by its field notes and patent at the southwest corner of the James Scott, and covers about one-half of the land in the W. C. R. R. Company's survey No. 2, situated in the southwest corner of the James Scott abandoned league claimed by appellant C. H. Kinney.

The Addison Weld survey, the location of which is the question in controversy in this suit, was one of a body of fourteen surveys known as the Trott surveys, none of which have any natural or known artificial boundaries and all lie in the prairie between San Jacinto River and Cedar Bayou. There is a body of older surveys between the Trott surveys and San Jacinto River, the exact location of which can be fixed from natural boundaries. These surveys are the Humphrey Jackson labor, the Humphrey Jackson league, the Reuben White league, and an old abandoned survey known as the Beardsley or Baldwin survey. On the east of the Trott survey and lying along and across Cedar Bayou are the Hannah Nash and the Hugh Morgan surveys and the James Scott abandoned survey. The location of the Nash and Scott surveys are definitely fixed, but the exact location of the west line of the Morgan survey is uncertain. The Trott surveys were located by Trott, county surveyor of Harris County, in April, 1839, the names of said surveys and the order in which the field notes were made and recorded

in the records of the office of the county surveyor of Harris County be-
ing as follows:

|  | Scrip No. | Page. |
|---|---|---|
| A. Whitlock | 186 | 42 |
| A. Whitlock | 187 | 43 |
| L. Hemmenway | 196 | 44 |
| L. Hemmenway | 351 | 45 |
| W. Gregory | 41 | 47 |
| W. Gregory | 42 | 47 |
| W. Gregory | 43 | 48 |
| W. Gregory | 44 | 49 |
| S. T. Champney | 93 | 50 |
| A. Weld | 183 | 51 |
| A. Weld | 184 | 52 |
| C. Ware | 191 | 53 |
| S. T. Champney | 199 | 54 |
| L. Hemmenway | 182 | 55 |

Numbers 1, 2, and 3 of said surveys, viz., A. Whitlock 186, A. Whit-
lock 187, and L. Hemmenway 196, form the southern tier of the Trott
surveys. No. 1 begins on the Baldwin survey and can be accurately
located by its field notes and so can No. 2, which begins on the east
line of No. 1. No. 3 begins at the southeast corner of No. 2 and calls
for the west line of the Hannah Nash survey. The evidence shows
that the west line of the Nash is 1200 varas west of where its location
should be in accordance with the calls of said survey No. 3 and the
larger part of the area of said survey is in conflict with the older Nash
survey. Survey No. 4 begins at the N. W. corner of No. 1 on the east
line of the Baldwin, and No. 5 begins at the S. E. corner of No. 4.
Both of these surveys can be located as called for in their field notes.
No. 6 begins at the N. W. corner of No. 3 and its west line is the east
line of No. 5. The same discrepancies in the calls for the Nash sur-
vey in the field notes of No. 6 exist as are shown in regard to the calls
in No. 3 and the conflict with the Nash covers almost the whole of sur-
vey No. 6. These three surveys, Nos. 4, 5, and 6, compose the second
tier of the fourteen Trott surveys. The next survey, No. 7, begins at
the N. W. corner of No. 6 in the east boundary line of No. 5 and calls
to run east to Cedar Bayou; thence north up the bayou; thence west
and thence south to the place of beginning. No. 8 begins at the N. W.
corner of No. 7 and calls to run south to the N. E. corner of No. 5;
thence west 616 varas; thence north 1950 varas to Scott's south bound-
ary line; thence north 80 deg. E. 2760 varas to Morgan's west boundary
line crossing Cedar Bayou at 2515 varas; thence S. 10 deg. E. with
Morgan's west boundary line to the N. E. corner of No. 7; thence with
the north line of No. 7 to the place of beginning.

As before stated, the location of the west line of the Morgan survey
called for in the field notes of No. 8 is uncertain, and the calls for the
bayou in the west line of survey No. 7 can not be verified upon the

ground if said survey is laid out from its beginning corner in accordance with the courses and distances called for in its field notes; but from the fact that the beginning corner of survey No. 1 can be accurately fixed by the east line of the Baldwin survey and each of the next succeeding eight surveys call to begin on the east line or at one of the east corners of the next preceding survey, the beginning corners and the west lines of both surveys Nos. 7 and 8 can be definitely fixed. The field notes of survey No. 9, which is the S. T. Champney No. 93 claimed by appellants, are as follows:

"Beginning at the S. W. corner of Jas. Scott's league, at a stake and mound in the prairie; thence N. 10 E. with the south boundary line, 1915 varas to the N. W. corner of survey No. 44, a stake and mound on the said Scott's line; thence S. 1950 varas to a stake and mound in the prairie; thence W. 2070 varas to a stake and mound in the prairie on the N. boundary line of survey No. 351; thence 2360 varas to a stake in the prairie on said Scott's W. boundary line; thence S. 10 E. 760 varas to the place of beginning."

Surveys Nos. 44 and 351 called for in these field notes are, as before shown, Nos. 8 and 4 in the order of location of the Trott surveys. The north boundary line of No. 351 and the west line of No. 44 called for in the field notes of the Champney survey can both be accuratively located. As before stated the southwest corner and the south boundary line of the Jas. Scott can be accurately fixed and located upon the ground, and the evidence is uncontradicted that the Champney survey claimed by appellants can be accurately located on the ground by its field notes without conflicting with any of the preceding Trott surveys. The patent to the S. T. Champney contains the field notes above set out, and was issued on May 8, 1841. The original field notes of the Addison Weld survey claimed by appellants were lost and a new survey was ordered by the Land Office. The field notes of this survey from the Land Office signed by Tipton Walker, surveyor of Harris County, purports to be the field notes of a resurvey made on May 1, 1845, and are the field notes contained in the patent to said survey which was issued on September 29, 1845. These field notes are the same as the original except that they call for the Baldwin survey where the Trott field notes call for the Beardsley, but the evidence shows that the Baldwin was first known as the Beardsley survey. The distance between the west line of the Champney survey, if that line is placed where called for in the field notes of said survey, and the east line of the Baldwin survey is 1200 varas less than the distance called for in the field notes of the Addison Weld 183. The trial court filed the following conclusions of fact and law:

"1. That the fixed points in the neighborhood of the surveys in question, as shown by practically all the evidence, are the corner of the Humphrey Jackson labor, at the intersection of Jackson's Bayou. The point is one of mathematical certainty, and on the position of this point the position of the Humphrey Jackson league and the Reuben White

league can be shown with certainty. The Reuben White league is laid off commencing on the lower corner, at the San Jacinto River, of the Jackson labor, and giving its upper line the distance called for in the field notes. Thence according to its calls, extending the distance called for in its last line, till it reaches the natural object called for, the San Jacinto River. The above are the fixed surveys on the San Jacinto River side and may be called the 'San Jacinto River surveys,' if to them are added several other surveys laid off adjacent to the Reuben White and filling the space formerly occupied by two old abandoned surveys known as the Baldwin and Shirley.

"2. On the Cedar Bayou side the position of the Hannah Nash league is shown with substantial identity by all the surveyors, by old marked lines in the timber. I adopt as the basis of my finding the position of said league as testified to by the surveyor, Hensholdt. There is practically no controversy on this point, though the position of the Hugh Morgan survey is very much a matter of mere conjecture. The evidence is wholly indeterminate on this point. The position of the James Scott (abandoned survey) can be laid off with accuracy by metes and bounds from the Juliana Malley league, whose south line is marked in the timber. I find it is correctly so laid off, as depicted on Hensholdt's map, and so laid off it is in conflict with some of the body of surveys known as the Trott surveys. The surveys above named, the Nash and the James Scott, may be called the 'Cedar Bayou surveys.'

"3. Between the 'Cedar Bayou surveys' and the 'San Jacinto River surveys' lies, wholly in the prairie and without artificial or natural monuments, the body of fourteen surveys, which are here called the 'Trott surveys.' Trott, the county surveyor of Harris County, pretended to have surveyed these surveys in April, 1839, but there is not enough room in the prairie by some 1200 varas between the 'Cedar Bayou surveys' and the 'San Jacinto River surveys' to put in these fourteen Trott surveys. The field notes of all in the county surveyor's records of Harris County are all dated April, 1839.

"I conclude that these fourteen surveys by Trott were not actually run upon the ground, but are what is known as 'chimney-corner work,' for the excess and the discrepancies are too great to occur in work done on the ground, between surveys clearly fixed on the ground and tied to streams. The shortage in the lower line of the Reuben White does not explain the error, or the theory of actual survey, because the same defect of distance exists between the James Scott and the Hugh Jackson league, which could not be affected by the lower line of the Reuben White, one way or another.

"Finding that the work was 'chimney-corner work,' how then should the Trott surveys be located? I understand the rule to be, in such a state of facts, to ascertain and follow the intent of the surveyor, as disclosed by his work. I find this intent to have been to fill up the gap between the 'Cedar Bayou surveys' and the 'San Jacinto surveys' with the fourteen Trott surveys, and to fill up this gap, start from the

side of the 'San Jacinto River surveys.' I reached this last conclusion because the field notes of the Trott surveys can be fitted in perfectly around the Humphrey Jackson, Reuben White, and Baldwin or Shirley surveys, and can not be filled in (without very considerable discrepancies) to the 'Cedar Bayou surveys' and to that bayou; and further, Trott, a Harris County surveyor, was more likely to be acquainted with the surveys in Harris County than with those in Chambers County. Also, the order of the surveys as they appear in the surveyor's book of Harris County begin on the San Jacinto River side.

"Conclusions of Law.—On the facts found, the court concludes the Trott surveys in controversy should be laid off in the prairie from the San Jacinto River side, according to course and distance. To which conclusions both of law and fact all parties except."

Conceding that the evidence sustains the trial court in his conclusion that the Trott surveys were not actually surveyed upon the ground, and that in such case the proper rule in determining the true location of said surveys is to follow the intent of the surveyor as disclosed by his work, we think there is no evidence in the record to sustain the conclusion that Trott in locating the Addison Weld survey intended to commence on the Baldwin survey and locate said Weld survey according to the courses and distances called for in its field notes, regardless of the fact that such location conflicts with his own work in previously locating the Champney survey. The evidence shows that in locating the third tier of surveys, which includes the Weld and Champney surveys, the surveyor did not start on the San Jacinto River, but on the Cedar Bayou side. Judged by his solemn written declarations contained in the field notes prepared by him for the Champney and Weld surveys, it was clearly the intention of Trott to commence the Champney survey at the southwest corner of the Jas. Scott survey and from such beginning corner to locate the lines of said survey in accordance with the calls for course and distance contained in said field notes, and to locate the Weld survey west of the west line of the Champney as thus fixed. It is equally clear that he thought there was room enough between the west line of the Champney, as located by his field notes, and east line of the Baldwin to admit of the location of the Weld.

What he would have done had he known that this space did not in fact exist is purely a matter of conjecture about which it is idle to speculate, for we are only concerned with his intention as regards facts and conditions that were known or appeared to him to exist. He must have known the location of the Scott survey, as the evidence shows that the distance from the southwest corner of the Scott along its south boundary line to Cedar Bayou (the only natural object called for in any of the surveys), as called for in the field notes of the Champney and W. Gregory surveys is approximately correct, and his intention to locate the Champney on the south line of the Scott beginning at the southwest corner of said survey is clear and unmistakable. It is unnecessary for us to determine the question as to whether the Champney may be consid-

ered the senior survey, since there is no conflict in the two surveys, and no question of priority is involved. We think it clearly appears from the evidence that no part of the land covered by the Champney patent is covered by the patent under which plaintiffs claim, and appellants, though they have shown no title to any part of the Champney survey, are entitled to be protected in their possession of same against plaintiffs, who also fail to show any title to any part of said survey. The judgment of the court below, in so far as it adjudicates the matters in controversy between the several defendants and between the plaintiffs and the defendants who have not appealed, being not appealed from, is undisturbed, but said judgment, in so far as it attempts to fix the location of the Weld survey east of the west line of the Champney as same is located in the field notes of said survey, is reversed and judgment is here rendered fixing the east line of the Weld on the west boundary line of the Champney, as said west line is located, by beginning the said Champney survey at the southwest corner of the James Scott and following the calls for course and distance contained in the field notes of said Champney survey.

*Reversed and rendered.*

### ON MOTION FOR REHEARING.

After mature consideration of the motions for rehearing filed in this cause and a careful re-examination of the record, we are convinced that our former judgment herein correctly disposed of the issues presented. Appellees are the plaintiffs in this cause suing defendants in possession of the land in controversy, and the burden is upon them to show by some competent evidence that the land in controversy is within the boundaries described in the patent under which they claim. This burden is not met by the mere showing of discrepancies in some of the calls in the field notes of the survey claimed by appellants. Appellees contend very earnestly in their motions for rehearing that our conclusions of fact set out in our former opinion do not support the judgment of this court, but on the contrary sustain the judgment rendered in the court below. This contention is based upon the finding by us that, "from the fact that the beginning corner of survey No. 1 can be accurately fixed by the east line of the Baldwin survey and each of the next succeeding eight surveys call to begin on the east line or at one of the east corners of the next preceding survey, the beginning corners and west lines of surveys Nos. 7 and 8 can be definitely fixed." If this finding be considered as locating the west lines of surveys Nos. 7 and 8 by giving controlling effect to the calls for the beginning corners of said surveys as fixed by running the lines of the preceding surveys, and disregarding the calls for Cedar Bayou, the only natural object called for in the field notes of any of these surveys, the west line of No. 8 would be placed about 3300 varas east of the southwest corner of the Scott survey. If the west line of No. 8 be thus fixed there is sufficient terri-

tory between said west line and the east line of the Baldwin survey to admit of the location of both the Weld and Champney surveys in accordance with the judgment of the court below, and appellees insist that under the finding above quoted the judgment heretofore rendered in this cause by this court should be set aside and the judgment of the court below affirmed. We do not think this contention is sound. Conceding for the sake of argument that the west line of No. 8 is fixed as claimed by appellees and that there is room between this line and the east line of the Baldwin to admit the location of the two surveys in question, it does not follow that appellees are entitled to have the Weld survey located as claimed by them. We think it is perfectly clear that the surveyor who made these locations intended that the Champney survey should cover all the area between the southwest corner of the Scott and the west line of survey No. 8, and if it be a fact that this area is largely in excess of the acreage called for in the field notes, this fact would not in itself authorize the location of the Weld on a part of said area when the field notes of said survey clearly show that it was the intention of the surveyor to locate same west of the Scott survey. But we did not conclude in our former opinion that the west line of surveys Nos. 7 and 8 should be fixed alone by the calls for the beginning corners. We overlooked the discrepancies in distance in the calls from Cedar Bayou to said west lines and the actual distance from the bayou to said lines as fixed by the location of the beginning corners, and the finding before quoted is based upon the assumption that no such discrepancies existed. We think it clear as stated in our former opinion. that the surveyor knew the location of the south line and the southwest corner of the Scott survey and the actual distance between said corner and Cedar Bayou, and we think it equally clear that he intended the space between said points should be occupied by surveys No. 8 and the survey claimed by appellants. There is nothing in the evidence to authorize the crowding out of surveys Nos. 7 and 8 so as to admit the location of the Weld survey at a place different from that called for in its field notes. Appellees' petition shows that they have no definite idea as to where the land claimed by them is located. They sue for double the amount of land called for by their patent, and allege that the north and south lines of their survey are twice the length called for in the patent, the evident object of such allegations being to recover the amount of land called for in their patent, whether same should be found to be located over the Champney or the Baldwin surveys, and in their motion for rehearing appellees, who were plaintiffs below, ask that in event we adhere to our former opinion as to the location of the Champney survey that we render judgment locating the Weld survey over the old abandoned ·Baldwin survey and on the land claimed by their coappellees. If the facts authorized the rendition of such judgment by us we could not grant this· relief, because the plaintiffs below have not appealed from the judgment and have filed no cross-assignments against their coappellees. It is true the plaintiff executor gave

notice of appeal, but having presented no assignments his appeal must be considered abandoned. We are of opinion that our former judgment in this case should not be set aside or modified in any way, and the motions for rehearing are overruled.

*Overruled.*

Writ of error refused.