## GIRAUD et al. v. HUFFMAN.
### No. 9610.

Court of Civil Appeals of Texas. Galveston.
Nov. 12, 1931.

Rehearing Denied Jan. 7, 1932.

A. E. Masterson, of Angleton, for plaintiffs in error.

Scott Gaines, of Austin, for defendant in error.

GRAVES, J.

This much of the statement made in the brief of plaintiffs in error, slightly changed for greater accuracy, is adopted as correctly outlining the general nature and result of the suit below:

"Plaintiffs in error filed this suit to recover the title to and possession of the A. B. Langerman 434-acre survey lying partly in Brazoria and partly in Fort Bend counties, 109.65 acres of it being claimed to be situated west of and adjoining Sections 58 and 68, H. T. & B. R. R. Co. Survey, owned by defendant in error. Plaintiffs in error introduced in evidence a patent from the State of Texas to F. M. Giraud, assignee of the A. B. Langerman, and by proper evidence connected themselves with the title to the land from the sovereignty.

"Defendant in error, after disclaiming all the land sued for except such 109.65 acres, sought to defeat plaintiffs in error's alleged title to that by attempting to show that there was no vacancy west of Sections 58 and 68 and east of the William Hall and William Pettus surveys, and that therefore the patent issued to F. M. Giraud was void.

"The patent to F. M. Giraud was issued on the 20th day of December, 1890.

"Defendant in error deraigns title to Section 58 through mesne conveyances from a patent issued on June 11, 1897, and deraigns title to Section 68 through mesne conveyances from a patent dated October 15, 1894, both junior to Langerman patent.

"Sections 58 and 68 both have their full quantity of land, as likewise have the William Pettus and William Hall, or river surveys, all of which is undisputed. The defendant in error is claiming that the north line and the south line of Sections 58 and 68 should go to these river surveys, basing his claim upon a lot of old surveying.

"Defendant in error also introduces a lot of old plats from the Land Office, which plaintiffs in error contend show no connection whatever with the present title to the Sections 58 and 68, or with the Langerman survey.

"Plaintiffs in error properly objected to the introduction of all such matters, surveys, field notes, plats, etc., which were made prior to the time of issuance of patents to said Sections 58 and 68 and to the Langerman survey.

"The court overruled plaintiffs in error's said objections, admitted the testimony, and rendered judgment for defendant in error for so much of the Langerman survey as lies west of said Sections 58 and 68; to all of which plaintiffs in error duly excepted, and gave notice of appeal to this honorable court."

The learned trial court filed these material findings of fact and law:

### "Findings of Fact.

"I. I find from the evidence adduced in this case as a fact that the tier of Section surveys along the east end of the older river leagues, being Sections Nos. 57, 58, 68, and 69, H. T. & B. R. R. Co. Surveys and contiguous sections in the same block of surveys, to have been originally located, surveyed and blocked by Will Powers, as District Surveyor, Brazoria District, in April, 1862; all of which surveying was a part of the same surveying, done at the same time, or approximately the same time, the field notes of which call to adjoin said old river leagues, as well as for corners and east line same, and call for, tie and blocked with each other, as disclosed in the original field notes of said surveys as certified by the said Will Powers, as District Surveyor, as same appear of record in the original surveyor's records of Brazoria County, Texas, together with certified blue print copy of original map by Will Powers, dated July 4, 1862, marked Defendant's Exhibit No. 3, from the archives and records of the General Land Office of the State of Texas, and the certified blue print copy of original map by Will Powers, dated Feb. 4, 1862, marked Defendant's Exhibit No. 2, from files of the General Land Office of the State of Texas, together with certified copy of vellum map dated in the year 1873, marked Defendant's Exhibit No. 2, from the files of the General Land Office of the State of Texas, together with illustrative map, marked Defendant's Exhibit No. 19, all of which was introduced in evidence by defendant, and are here referred to, adopted and made a part of this finding; together with the Patents issued by the State of Texas, covering said Sections Nos. 57, 58, 68 and 69, as introduced in evidence by the plaintiff.

"II. I further find as a fact from the original field notes introduced in evidence as made and certified by the locating surveyor, Will Powers, in April, 1862, that Section No. 57 calls 'to begin at a Cedar Stake at the S. E. Corner of the Pettus League, and to run North along the East line of that league to a Cedar Stake marked with *– – – on the east line of said league,' giving the other three calls the same length and calling for the N. W. and S. W. corner of Section 56 on the East side; and that Section 58, which lies immediately North of Section No. 57, 'begins at the N. W. corner of 57 on the East line of the Wm. Pettus League at a stake marked – – –' calling for the same stake as in the foregoing filed notes of No. 57; runs thence N. 950 varas calling to pass the N. E. corner of the Pettus League at 450 varas; thence E. 1900 varas to a stake crossing a slough at 750 varas; thence S. and W. 1900 varas on each call, for the corner of Nos. 56 and 57, this survey bearing same date as the other. The surveyor, Will Powers, while not specifically calling for the east line of the Wm. Hall, begins by saying: 'Said survey No. 68 is situated in Brazoria County, on the headwaters of Chocolate Bayou west of Section 67. and east of the survey of one league for William Hall.'

"Beginning at the S. W. corner of 67 at a live oak stake marked TC; thence W. 1900 varas crossing a prairie slough at 1150 varas to a stake *on east line of Wm. Hall,* thence north 1900 varas to a hole and mound *passing Hall's N. E. cor. at 1020 varas where stands a cedar post 6 in. in dia. mkd. W. H.;* thence east 1900 varas, and south 1900 varas to the beginning, 'as taken from the original field notes as made by Will Powers, as District Surveyor, Brazoria County, as same are recorded in Vol. B, page 118, of the original surveyor's records of Brazoria County, Texas, said interlineation is ours to indicate where upon said record an apparent line has been drawn thru said portions of said original field notes.

"This prairie slough in going west on the south line of Section No. 68 is called for at 1150 varas, so that, construing all of these field notes together, show that the S. W. corner of Section 57 and the S. E. corner of the Wm. Pettus league to be a common corner, and that the West boundary line of the Sections Nos. 58 and 68 is formed by an extension due north of this line for the combined distance of 5700 varas; at the corners of each of these sections is a common corner with the adjoining section. I observe with reference to these field notes that the North line of Section No. 58, which is also the South line of Section No. 68, which point is north 3800 varas from the S. W. corner of the Pettus Survey, runs east crossing the slough at 750 varas and that the field notes of No. 68 adjoining it above, calls to begin at the S. E. corner of 68 and run west 1900 varas crossing this same slough at 1150 varas, so that the field notes in the north line of 58 running east and those of Section 68 running west, fix this slough at exactly the same point and shows that the east line of the S. E. corner of 68, was fixed at a point by the locating surveyors 750 varas from the crossing on this slough, in illustration of all which reference is here made to the illustrative pencil sketch in evidence marked Defendant's Exhibit No. 19, filed among the papers of this cause, and made a part of this finding.

"III. I further find as a fact that J. A. Donaldson as County Surveyor of Brazoria County by letter dated September 6, 1894, to Hon. W. L. McGaughey, Commissioner, General Land Office, Austin, Texas, which letter is post-marked 'Houston, Texas,' which reads as follows:

"'At the request of L. M. Disney, of Houston, I have corrected on my books the field notes of Section No. 68, H. T. & B. R.

R. Survey, Certificate No. 5/247, J. S. Talmage original grantee, which is situated in Brazoria County on the head of Chocolate Bayou, east of the William Hall League, to read as follows:

" 'Beginning at the southwest corner of Section No. 67, at a live oak stake marked "TC" thence West 1900 varas, crossing a prairie slough at 1150 varas; thence North 1900 varas to a stake for corner; thence East 1900 varas to a live oak stake marked "TC"; being the northwest corner of Section No. 67; thence South 1900 varas along the west line of No. 67 to the place of beginning.'

" 'And I authorize you to make the same correction in your office.

" 'Yours truly,

" 'J. A. Donaldson,

" 'County Surveyor Brazoria County.'

"I find from a careful comparison of the two sets of field notes, being the original field notes as made and certified by Will Powers, the locating surveyor, and the corrected field notes, as made by J. A. Donaldson, that there is really no material difference between them, said correct field notes calling for said section east of the William Hall League, both having the same dimensions, courses and distances; said corrected field notes apparently made at the request of L. M. Disney, a stranger to the title, and to have been made without an actual survey upon the ground, and that Patent issued from the State of Texas covering said Section No. 68, October 15, 1894, carrying with it the same field notes as shown in said corrected field notes by J. A. Donaldson.

"IV. I further find as a fact that S. M. Farr, Surveyor of Fort Bend County, Texas, on May 29th and June 4th, 1890, attempted to locate a survey of land evidently upon the theory of a vacancy existing between the block of section surveys as made by Will Powers, and the old river leagues, being a survey of 434 acres of land, made for A. B. Langerman, said land being described in said field notes as situated on the headwaters of Chocolate Bayou, a tributary of West Galveston Bayou and is about 19¼ miles 77½ deg. east from the town of Richmond, and lies a part in Fort Bend and a part in Brazoria Counties: (Field notes, showing 109.65 acres of the survey as lying between Sections 58 and 68 and the Wm. Pettus and Wm. Hall surveys, omitted).

"Which field notes appear of record in Vol. C, page 401, of the Surveyor's Records of Brazoria County, Texas, upon which Patent issued to F. M. Giraud, under date of December 20, 1890, being a junior survey to that of Sections Nos. 57, 58, 68 and 69, which are senior to said A. B. Langerman.

"V. I further find as a fact that it was the intention of Will Powers, as locating survey of Sections Nos. 57, 58, 68 and 69 and contiguous surveys, in April, 1862, to adjoin said surveys to the older river leagues, of the Wm. Pettus, William Hall, David Fitzgerald, and I. & G. N. Survey, and that he did this by his calls for the lines and corners of said leagues, and ties to each other, in conformation to his plats and field notes duly certified and filed, leaving no vacancy between them, and that to permit the location of the A. B. Langerman to stand as located by the surveyor F. M. Farr on May 28th, and June 4th. 1890, would throw said survey in conflict with the Sections Nos. 57, 58, 68 and 69 as located and surveyed by Will Powers, in April, 1862, as shown by pencil illustrative sketch map introduced in evidence by defendant, and marked Defendant's Exhibit No. 19, which is here adopted, referred to and made a part of these findings. * * *

"Conclusions of Law.

"I conclude as a matter of law based on the foregoing facts that the A. B. Langerman survey is a junior survey to that of the Section Surveys Nos. 57, 58, 68 and 69, H. T. & B. R. R. Co., and that said section surveys have precedence and priority of location over the same; and that it was the intention of the locating surveyor, Will Powers, of said section surveys to adjoin them to the old river leagues, and that he did this by actual location and survey, leaving no vacancy between them.

"I further conclude as a matter of law that plaintiffs are entitled to recover judgment for that portion of the land in controversy disclaimed by the defendant, and that the defendant, G. I. Huffman, is entitled to recover judgment for that portion of said land not disclaimed, and for title and possession thereof."

 On the appeal there is no contention that any of the quoted findings lacked support, if the old surveys and plats of surveyor Powers that were so objected to below were admissible in evidence, but it is insisted here that they were not, because it is not shown that any action of the land office was ever taken upon either, nor even that the field notes of such surveys were ever returned there as required by law, the same having only been shown to have been spread upon the surveyor's records of Powers' official county of Brazoria.

The argument then proceeds to urge that, in the absence of any such action on or official cognizance of these old prior Powers surveys and maps, it is apparent that they were abandoned, and that the surveyor's finally returned field notes to sections 58 and 68 on which the patents therefor that defendant in error claims under of June 11 of 1897 and October 15 of 1894 were issued, and which of themselves show that a vacancy did exist between such sections and the Pet-

tus and Hall river surveys on the west, were not only inadmissible but wholly invalid.

Upon the same general consideration it is also said that the court erred in admitting in evidence the defendant in error's chain of title to sections 58 and 68 at all, the same being irrelevant and immaterial to any issue in the case; since neither his title to nor actual possession of the full complement of land called for in the two described patents under which he held and claimed was in any way disputed.

The same objection was entered to the receipt of the Donaldson letter to the commissioner of the land office of September 6, 1894; that is, that no showing appeared indicating any recognition by the latter of the former's attempt to correct the field notes of section 68.

The authorities cited under these several presentments are Clawson v. Williams, 27 Tex. Civ. App. 130, 66 S. W. 702; Garza v. Cassin, 72 Tex. 440, 10 S. W. 539; Greenwood v. McLeary (Tex. Civ. App.) 25 S. W. 708; Von Rosenberg v. Cuellar, 80 Tex. 249, 16 S. W. 58. But we fail to find support in them for the doctrine declared on; on the contrary, the only one of them of even apparently material bearing on the question, Garza v. Cassin, seems to trend the other way in its holding that a failure to return to and file the surveys in the general land office, within the twelve months then prescribed after they were made, did not absolutely destroy the right, as between the state and themselves, of those having had the surveys actually made to acquire the land thereunder—as would have been the effect of a failure to make the surveys within that period after a location had been fixed—but that they could thereafter do so, so that it would seem that the mere priority in time of the issuance or existence of a patent therefor is not conclusive as between rival claimants of the same land, but that a survey under a valid location, although unpatented, will prevail over a patent issued under a location subsequently made; wherefore, as the trial court correctly concluded, the determining considerations in this instance were, which group of surveys—those made by Powers in 1862, or those under which the subsequent Giraud patent was issued—were the original and senior ones of this land, and where did they place it?

To solve that inquiry, we think all the attending circumstances were receivable (Masterson v. Ribble, 34 Tex. Civ. App. 270, 78 S. W. 358), inclusive of the field notes, maps, and plats of record either in the office of the county surveyor of Brazoria county or the general land office that were found to have been the original ones. R. S. arts. 3721, 5290, 5291, 5277, 5299; Giddings v. Thompson

(Tex. Civ. App.) 92 S. W. 1043; Poor v. Boyce, 12 Tex. 440; Hamilton v. Saunders (Tex. Civ. App.) 73 S. W. 1069; Wells, Stillwell & Spears v. Dupuy (Tex. Civ. App.) 289 S. W. 718.

Especially are certified maps from the general land office at least admissible, as tending to show the location of surveys therein outlined, when shown to be the work of the original locating surveyor in delineating the results of his actual work upon the ground in blocking a system of surveys. Houston & T. C. Railway Co. v. Bowie's Heirs, 2 Tex. Civ. App. 437, 21 S. W. 304; Bond v. Kirby Lumber Co. (Tex. Civ. App.) 2 S.W.(2d) 936; Schunior v. Russell, 83 Tex. 83, 18 S. W. 484; Texas & Pacific Ry. Co. v. Thompson, 65 Tex. 186.

Other issues are considered in the briefs, but, since the trial court's findings of fact as such are neither attacked, nor, in our opinion, could have been successfully so, these conclusions as to the admissibility of the evidence discussed determine the merits of the appeal.

They require an affirmance of the judgment entered below; it has been so ordered.

Affirmed.