SIMPSON v. AMARILLO MUT. BENEV. ASS'N et al.

No. 4152.

Court of Civil Appeals of Texas. Amarillo.

Feb. 12, 1934.

598

George, Brannan & Tipps, of Wichita Falls, and Ernest Tibbets, of Silverton, for appellant.

JACKSON, Justice.

The appellee benevolent association issued a certificate of mutual life insurance to Ira Simpson in the sum of $1,000. After the death of the assured, Earl Simpson, as beneficiary, sued, and on the 12th day of January, 1933, recovered a judgment in the district court of Briscoe county against the association for the full amount of $1,000, with interest thereon. The judgment, in part, recites as follows:

"The Court further finds that the defendant operates upon an 'assessment as needed' plan of mutual insurance, assessing its members each time a death occurs for which a claim is filed and that there are in this state in excess of 1200 members in good standing in said defendant association. * * *

"It is therefore ordered, adjudged and decreed by the Court that the plaintiff do have and recover of and from the defendant the sum of $1,000.00 as the maximum sum payable as stipulated in said policy as the mortuary part received from each member upon assessment, together with interest from date hereof at 6% per annum and that plaintiff recover his costs. It is further ordered, adjudged and decreed that the above named directors and their successors in office in said defendant association immediately assess each of the members of said association with one assessment and to promptly pay to plaintiff herein the mortuary part of said assessment not to exceed $1,000.00 and that said directors and their successors in office pay this sum to the plaintiff before any other claim now filed with said defendant association is paid. The Court further directs said directors to refrain from paying out any amount in said mortuary part to any other person than the plaintiff herein until plaintiff is fully paid, according to the terms of this judgment. The Court further orders said directors to file with this Court within thirty days a verified account of the mortuary fund received upon the aforesaid assessment."

No appeal was prosecuted from this judgment.

The association filed a pleading in the district court of Briscoe county on February 9th thereafter, which recites, in part, as follows:

."Whereas the Honorable District Court of Briscoe County did on or about the 19th day of January, 1933, make and enter a certain order in cause No. 764, styled Earl Simpson vs. Amarillo Mutual Benevolent Association, which said order and judgment bore the date 12th of January, 1933, requiring the officers of the Amarillo Mutual Benevolent Association, defendant in said cause, to levy an assessment against the members thereof for the purpose of promptly paying the plaintiff in said suit, Earl Simpson, the amount of the judgment awarded him in the sum of $1,000.00 and did by said order direct that said directors pay this sum to plaintiff before any other claim now filed with this Association is paid * * *

"Now, therefore, the Amarillo Mutual Benevolent Association * * * does here and now report to said Court in obedience to said order that the directors of said Association did on the 20th day of January, 1933, make and execute an order levying an assessment against each and all members * * * and that in response to said levy and notice of said assessment, there was received * * * the sum of $3,200.00."

The testimony of the receiver Avery is that the $3,200 so collected, was paid to him in his official capacity on February 6, 1933.

This report was verified. The record shows that the assessment was made on January 20, 1933, and members were directed to pay within fifteen days thereof, or on or before February 4, 1933. On February 6, 1933, Gladys L. Williams and other certificate holders in said association applied to the judge of the Forty-Seventh judicial district court of Potter county for the appointment of a receiver of said association, alleging its insolvency, and upon the granting of said petition J. H. Avery was appointed as the receiver and Alton B. Reeder was appointed master in chancery. Numerous certificate holders intervened in this action, and on May 12th Earl Simpson, appellant herein, filed his plea of intervention setting up his judgment and the proceedings in the district court of Briscoe county. The master in chancery filed his report finding that Earl Simpson's judgment was a preferred claim and entitled to priority of payment over the claims of all other interveners who were simply certificate holders. Objections and exceptions were made to the master's report,

and on the 27th day of May the judge of the Forty-Seventh district court of Potter County rendered and entered a judgment denying the right of Earl Simpson to a preference, but allowed it as a claim to be paid upon equality with all other certificate holders in the distribution of the assets of said company, which was found to be insolvent.

Upon an appeal by Simpson alone, the controversy is before this court.

By his first proposition the appellant insists that the Forty-Seventh judicial district court of Potter county had no authority to set aside the judgment of the district court of Briscoe county previously rendered and deny appellant's preference in the funds assessed and collected by the company in obedience to the orders of the district court of Briscoe county for the special purpose of paying the judgment rendered in favor of appellant.

This proposition must be sustained.

The effect of the judgment rendered in the Forty-Seventh judicial district court is to set aside and annul the judgment previously rendered by the district court of Briscoe county.

■ When one court has acquired jurisdiction of matters in litigation, its authority continues until all matters between the parties to the action have been fully determined, and no other court of co-ordinate jurisdiction may act therein, and any attempt to do so is void, for, as has been said in Cleveland v. Ward, 116 Tex. 1, 285 S. W. 1063, 1071: "It seems impossible that two courts can, at the same time, possess the power to make a final determination of the same controversy between the same parties." Stewart v. Poinboeuf, 111 Tex. 299, 233 S. W. 1095.

The rule is further announced with reference to cases of equitable cognizance that, when a court of general jurisdiction has acquired jurisdiction of a cause for one purpose, it will retain jurisdiction as to all questions which are properly involved in the suit or which may become involved by reason of the amendment of pleadings. Zane-Cetti v. City of Ft. Worth (Tex. Civ. App.) 21 S.W.(2d) 355; Chambers & Thigpen v. Cannon, 62 Tex. 293; Cox v. Sinclair Gulf Oil Co. (Tex. Civ. App.) 265 S. W. 196; Conn v. Campbell, 119 Tex. 82, 24 S.W.(2d) 813.

■ The judgment of the district court of Briscoe county is res judicata of the right declared therein that Earl Simpson was entitled to be paid by the association the face of his policy. It became the duty of the officers of the association, when the assessment levied to pay Simpson's claim had been collected, to pay said amount into the registry of the court of Briscoe county. The district court of Potter county had no authority to order its payment to its receiver J. H. Avery. Scruggs v. Memphis, etc., R. Co., 108 U. S. 368, 2 S. Ct. 780, 27 L. Ed. 756.

■ We are not passing upon the question of the propriety of the appointment of Avery as receiver by the district court of Potter county That issue is not before us, but it is clear that he had no right in any event to the possession of any of the funds collected upon the assessment levied for the purpose of paying Simpson's claim, until said claim and the accrued costs in that case had been fully paid off and discharged. State v. Epperson, 121 Tex. 80, 42 S.W.(2d) 228; Cavers v. Sioux Oil & Ref. Co. (Tex. Com. App.) 39 S.W.(2d) 862; Chapman Milling Co. v. Yakey (Tex. Civ. App.) 51 S.W.(2d) 639; Gohlman, Lester & Co. v. Whittle, 115 Tex. 9, 273 S. W. 806; Carey v. Looney, 113 Tex. 93, 251 S. W. 1040; Switzer v. Smith (Tex. Com. App.) 300 S. W. 31, 68 A. L. R. 377; Id. (Tex. Civ. App.) 293 S. W. 850; Brunson v. Donald (Tex. Civ. App.) 3 S.W.(2d) 596.

As said in 3 Couch, Cyc. of Ins. Law, § 597: "As a general rule dues and assessments are collected for a specific purpose and with relation to the members who are called upon to pay them, the contract obligation governs. And when such funds are collected, they should ordinarily be applied to the specific purpose for which they are collected. In fact, it has been said that funds raised for a stated purpose must be used for such purpose. Again, when an assessment has been levied and paid to the Company, the fund thereby becomes, to a certain extent, a trust fund and if the claim for which the assessment has been made is a lawful one, the Company will be obligated to pay said benefit. Thus where a death claim has accrued and an assessment has been levied to satisfy the same and the payment of the same has been delayed and the amount has passed into the hands of a receiver, the amount is subject exclusively to the payment of the claim which it was levied to meet and is not an asset subject to other claims."

3 Joyce on Insurance (2d Ed.) 1289, announces the same rule.

In 5 Joyce on Ins. (2d Ed.) § 3596, it is said: "Claims for death losses maturing before the insolvency of a mutual company have, it is held, a preference to claims on unmatured policies. The contract is between members of the same Company prior to the member's death, but after his death the risk terminates

and the beneficiary's rights thereunder are fixed. The Company has by the maturing of the claim, become indebted for a certain amount to a stranger of the Company. Prior to his death the member is entitled only to his share of the fund which exists for the benefit of the policy holders; upon his death, however, the obligation of the Company becomes a fixed one, not to a member, but to an outsider and therefore to be preferred to the members of the Company being entitled to a share with the general creditors. In New York, however, it has been held that holders of death claims and those to whom an assignment of such claims have been made, should be preferred over other creditors of the Company and that after the payment of such claims all other creditors should share pro rata." Kitchen v. Conklin, 51 How. Prac. (N. Y.) 308; Stamm v. Northwestern M. B. Ass'n, 65 Mich. 317, 32 N. W. 710; Burdon v. Mass. Safety Fund Ass'n, 147 Mass. 360, 17 N. E. 874, 1 L. R. A. 146; In re Equitable R. F. Life Ass'n, 131 N. Y. 354, 30 N. E. 114; Id., 61 Hun, 299, 16 N. Y. S. 80. See, also, Elkhart Mut. Aid B. & R. Ass'n v. Houghton, 103 Ind. 286, 2 N. E. 763, 53 Am. Rep. 514; Taylor v. Nat'l T. R. Union, 94 Mo. 35, 6 S. W. 71; Earnshaw v. Sun Mut. Aid Soc., 68 Md. 465, 12 A. 884, 6 Am. St. Rep. 460; 19 R. C. L. 1304.

■■ The appellant further contends that, because the $3,200 was collected under the orders of the court and in compliance with the terms of the certificate issued to members of the association, it was a trust fund, and that appellant had an equitable lien on so much of the fund as would be necessary to satisfy the judgment in his favor rendered in the district court of Briscoe county.

The certificates of all the interveners, including the appellant, contain this stipulation: "This Association agrees upon the death of above insured to pay to Earl Simpson, son, if living, otherwise to the legal heirs of the insured, the sum of the mortuary part received from each member upon the assessment, the maximum sum of $1,000.00 provided this certificate is not lapsed at the death of the insured."

Durrett, the secretary of the association, testified that on January 12, 1933, the mortuary fund of the association was exhausted or approximately so; that the association had no capital stock and paid claims upon policies by assessment of each member; that on February 4, 1933, as proceeds of the mortuary part of the assessment ordered by the court, he received approximately $3,200, which he later turned over to Avery, the receiver appointed in this case.

Vernon's Ann. Civ. St. arts. 4875a—13, 4875a—17, provide that relief funds of associations such as the appellee shall be created by assessments levied upon its members; that calls for assessments must specify the purpose for which made; that the benefits to be paid shall be dependent upon the amount realized from assessments upon the membership and the certificate shall so provide and state the maximum to be paid.

Because the certificate which evidences the contract between the assured and the association stipulates that upon the death of the assured an assessment shall be made, the mortuary part thereof to the extent of $1,000 to be paid to the beneficiary, and because the statute which is a part of the contract also requires the association to make the assessment and specify the purpose of the assessment, it follows that the fund so collected must be held in trust for the beneficiary in that certificate. This is the effect of the authorities hereinbefore cited. Immediately upon the collection of the funds, equity will fix a lien thereon to the extent of $1,000 for the satisfaction of the judgment rendered in the district court of Briscoe county. An equitable lien arises in cases of this character from the express contract provided the contract deals with specific property or funds. If by the terms of the agreement one party clearly manifests an intention to make a particular fund security for a debt or obligation, an equitable lien is created upon the funds so indicated. The fund is sufficiently specified not only in the certificate but in the judgment rendered by the district court of Briscoe county, and the testimony of Durrett and the receiver Avery describes and identifies the fund beyond question. Batson v. Coley & Wilson (Tex. Civ. App.) 59 S.W.(2d) 445; Vivion v. Nicholson, 54 Tex. Civ. App. 43, 116 S. W. 386; Red River County Bank v. Higgins, 72 Tex. 66, 9 S. W. 745; Parks v. O'Connor, 70 Tex. 377, 8 S. W. 104; Atlanta National Bank v. Four States Grocer Co. (Tex. Civ. App.) 135 S. W. 1135.

As stated in 3 Pomeroy's Eq. Juris. § 1235: "The doctrine [of equitable lien] may be stated in its most general form that every express executory agreement in writing whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal or fund therein described or identified, a security for a debt or other obligation * * * an equitable lien upon the property so indicates which is enforceable

against the property in the hands not only of the original contractor but of his heirs, administrators," etc.

Id. § 1236: "The doctrine is carried still further and applied to property not yet in being at the time when the contract is made. It is well settled that an agreement to charge or to assign or to give security upon or to affect property not yet in existence or in the ownership of the party making the contract or property to be acquired by him in the future * * * does constitute an equitable lien upon the property so existing or acquired at a subsequent time which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract."

From what has been said it is clear that the officers of the association were without authority to deliver the $3,200 collected on the assessment into the hands of the receiver Avery; that the judge of the Forty-Seventh judicial district was without jurisdiction to adjudicate the rights of the appellant Earl Simpson to the extent of denying him a preference in the specific fund collected upon the orders of the district judge of Briscoe county. The receiver Avery took the entire fund subject to the judgment in Simpson's favor rendered in Briscoe county.

We are requested by the appellant to reverse and render the judgment in his favor, but on account of the disposition made by the district judge of the Forty-Seventh district and of the receiver of the bulk of the fund in the receiver's hands and because of the rights granted the other twenty interveners who are coappellees here and the failure of the record to show the amount of costs accrued in the district court of Briscoe county in the original judgment, we cannot render the judgment. Neither the association nor any of the coappellees have filed cross-assignments. Sullivan v. Michael, 39 Tex. Civ. App. 564, 87 S. W. 1061; Clawson v. Williams, 27 Tex. Civ. App. 130, 66 S. W. 702; Compton v. Jennings Lumber Co. (Tex. Civ. App.) 295 S. W. 308; Hoover v. Kearbey, 25 Tex. Civ. App. 71, 60 S. W. 782; Irwin v. Auto Finance Co. (Tex. Civ. App.) 40 S.W.(2d) 871; Bates v. Crane County (Tex. Civ. App.) 55 S.W.(2d) 614.

The judgment as a whole is therefore reversed, with these instructions to the trial court: That appellant be decreed a recovery for the full amount of his $1,000 and all costs of the suit in Briscoe county, together with the costs of this proceeding, and, if it should appear that the receiver was wrongfully appointed, then he be decreed a recovery against those responsible for the appointment of such receiver and interest at the rate of 6 per cent. upon the judgment rendered in his favor in the district court of Briscoe county. Hook v. Payne (Tex. Civ. App.) 211 S. W. 280. That said judgment declare the existence and foreclosure of an equitable lien in appellant's favor upon the funds in the hands of the receiver to the extent of his recovery and costs in the district court of Briscoe county.

Reversed and remanded, with instructions.

HALL, C. J., disqualified, not sitting.