**D. U. EMMERT et al., Appellants,**

**v.**

**Lawrence DRAKE, Appellee.**

**Hugh F. WALSH, Appellant,**

**v.**

**D. U. EMMERT et al., Appellees.**

**No. 15272.**

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Rehearing Denied Aug. 15, 1955.

**300**

J. Hart Willis, Stanley M. Kaufman, Willis & Willis, Robert S. Strauss, Dallas, Tex., for appellants Emmert, Aldredge, Coffee, Mohrle, and Oster.

Chandler Lloyd, Joe W. Matthews, Biggers, Baker, Lloyd & Carver, Dallas, Tex., for appellant Walsh and appellee Drake.

Before RIVES, Circuit Judge, and DAWKINS and DE VANE, District Judges.

DE VANE, District Judge.

This is an appeal by H. R. Aldrich, Jr., Roy C. Coffee, C. A. Mohrle, H. M. Oster and D. U. Emmert and cross-appeal by Hugh F. Walsh from a judgment of the United States District Court for the Northern District of Texas, Dallas Division, entered the 16th day of July, 1954. The original suit was brought by Lawrence Drake and Hugh F. Walsh, hereinafter sometimes referred to as plaintiffs, against appellants on two promissory notes signed by D. U. Emmert, President, on behalf of Metals & Chemical Corporation and attested by its Secretary, M. R. Warlick. The corporation which executed the two notes was not made a party to the litigation nor was any relief sought against the corporation, but appellants were sued individually and jointly as Directors of the corporation. Two Directors, W. L. Moody, III, and Stewart M. Wyeth were not made parties to the suit.

The complaint alleged that the corporation duly executed two notes, each due six months after date, one in the principal sum of $10,000.00, dated April 25, 1952, in favor of Drake and the other in the principal sum of $6,000.00, dated April 29, 1952, in favor of Walsh, for money which the corporation had borrowed from these parties. Each of the two notes contained an identical provision as follows:

"It is expressly understood and agreed that this note will be payable out of the proceeds of the first public financing through the public sale of the corporation stock, should such public financing occur within the aforesaid six months. It is also understood and agreed that the foregoing provisions are not intended to extend in any manner the due date of this obligation beyond its primary six months."

Prior to the delivery of these notes the corporation passed a resolution as follows:

"Resolved: That the President of the corporation is hereby empowered and directed to borrow $100,000.00 for and on behalf of the corporation and to issue and execute therefor proper notes of the corporation with payments on or before six months from date, to bear five (5) percent interest per annum and to provide for payment thereof out of the first proceeds of any funds received by the corporation as a result of the public offer of its stock."

This resolution bore the date of May 2, 1952, which was subsequent to the date appearing on the face of the notes, but the notes were not delivered to plaintiffs until the resolution had been adopted and a copy thereof was transmitted to plaintiffs along with the notes.

At the time the corporation borrowed the money from plaintiffs it planned a public issue of its stock. In pursuance of this plan the corporation filed a registration statement with the Securities & Exchange Commission which disclosed the obligation of the corporation to pay these notes in addition to others out of the first proceeds of any funds received through the public sale of the corporation stock. Said public sale began on July 21, 1952 and the corporation received from said sale of its stock a total of $221,044.20 by November, 1952.

Instead of using such money to pay the notes of plaintiffs the corporation caused the sum of $112,500.00 to be transferred as a loan to a subsidiary corporation; used $49,870.70 to pay a note of the National City Bank of Dallas, Texas; $5,000.00 to a creditor in repayment of an advance; $19,069.93 to pay various general creditors for services rendered and used the balance for other corporate purposes. The stock issue did not succeed in its entirety and was withdrawn in December, 1952. The corporation was insolvent when this suit was instituted.

The case was tried to the court without a jury. At the conclusion of the trial the court, in an oral statement, found in favor of the two plaintiffs for the amount due on each note, with interest and attorney's fees, but in the final judgment entered on June 16, 1954 the court ordered that plaintiff Drake recover from the appellants, jointly and severally, in the amount due him, but ordered that plaintiff Walsh have and recover nothing of and from the appellants. Appellants have appealed to this court from the judgment against them in favor of Drake and Walsh has filed a cross-appeal from the judgment against him.

### The Drake Judgment

Appellants have assigned five specifications of error. The first three deal with the question of the liability of directors of a corporation in cases where no charge is made against them of fraud or misappropriation of funds. The fourth specification of error is an objection to the introduction of the resolution of May 2, 1952 on the ground that it varied or changed the terms of the note sued upon and the fifth specification of error objects to the use of the registration statement filed with the Securities & Exchange Commission in support of plaintiff's claim on the ground that it also had the effect to change or vary the terms of the note sued upon. The first three specifications of error will be considered together. Specifications four and five will also be considered together.

In their brief filed in behalf of appellants counsel predicated their argument in support of the first three specifications of error primarily upon the following statement of law which is taken from their brief:

"It is well settled that if officers act in good faith and within their authority and use a proper degree of prudence and diligence they are not responsible to either the corporation or creditors for losses resulting from mere mistakes of error or judgment."

They cite many textbooks and cases in support of this statement of the law and they rely in addition on the case of Conrick v. Houston Civic Opera Association, Inc., Tex.Civ.App., 99 S.W.2d 382.

No fault may be found with the general statement of law set out above or with the decision of the court in the Conrick case, but the numerous textbooks and cases relied upon by counsel for appellants, including the Conrick case, are not applicable in this case. Here we have a case where the Directors of a corporation passed a resolution empowering and directing its President to borrow $100,-000.00 for and on behalf of the corporation and to issue and execute therefor proper notes of the corporation and provided further in said resolution for the payment of these notes "out of the first proceeds of any funds received by the corporation as the result of a public offer of its stock": The record in this case shows that the money so borrowed was authorized and borrowed for the express purpose of enabling the corporation to make a public offering of its stock.

■ When the corporation note was delivered to Drake it contained a provision heretofore quoted that the note was payable out of the proceeds of the first public financing through the public sale of the stock of the corporation and plaintiff Drake was furnished with a copy of the resolution of the Board authorizing the President to borrow the money. The terms of the promissory note here sued upon and the resolution authorizing the corporation to borrow this money operated to create an equitable lien upon the first proceeds of any funds received by the corporation as the result of the public offering of its stock and it became the duty of the Directors of the corporation to see to it that this money was used for that purpose. They cannot excuse themselves by saying that in no way they misappropriated or dissipated any of the funds of the corporation or were in other respects derelict in their duty as Directors. Two Texas cases clearly support this as the law in Texas. See: Simpson v. Amarillo Mutual Benefit Ass'n, Tex.

Civ.App., 68 S.W.2d 597; Dollar v. Lockney Supply Co., Tex.Civ.App., 164 S.W. 1076; McCollom v. Dollar, Tex.Civ.App., 176 S.W. 876 and McCollom v. Dollar, Tex.Com.App., 213 S.W. 259.

■ The objection to the introduction of the resolution of May 2, 1952 and the use of the registration statement filed with the Securities & Exchange Commission in support of plaintiff's claim are not well taken. Neither of these instruments in any way varied the terms of the note sued upon.

As to the resolution of May 2, 1952, a copy of this resolution accompanied the note sent Drake and the registration statement merely constituted additional proof of the commitment of the Board of Directors to pay this and other similar obligations out of the first proceeds derived from the sale of the stock of the corporation.

■ While the specifications of error make no point of it, counsel for appellants calls our attention to the fact that the record shows that all Directors were not present on May 2, 1952 when the Board passed the resolution authorizing the President of the corporation to borrow $100,000.00 for the use and benefit of the corporation and the conditions under which this money was to be borrowed. In connection with this point it is only necessary to observe that the record shows that all Directors sued knew of the action taken and this suit was defended by appellants on the common ground that none were liable. No Director attempted to shift his responsibility to another.

■ Counsel for appellants also calls the court's attention to the fact that two Directors (Moody and Wyeth) were not made parties to this suit. This point is also not well taken for the reason the record shows that Wyeth is a resident of Pennsylvania and not amenable to the process of the Texas court or this court. The record disclosed that Wyeth arranged for the loan from Drake to the corporation and the appellants or Drake are free to sue him.

The record contains no information about Moody, except that he was for a short time (not specified) a Director of the corporation. The record nowhere discloses his whereabouts when the suit was instituted nor thereafter.

The judgment in favor of Drake was right and will be affirmed.

### The Walsh Judgment

As stated above, at the conclusion of the case the court found in favor of plaintiff Walsh as well as plaintiff Drake, but, without any explanation appearing in the record for any contrary holding, when the court entered final judgment at a later date he entered a judgment in favor of Drake but against Walsh.

Counsel for cross-appellant Walsh assumed upon argument of the case that the court probably took this action because the record disclosed that Walsh had first sued the corporation in the State Court, had reduced his note to judgment and had levied execution upon the few assets of the corporation and had credited the judgment with the amount realized from the sale of these assets. The suit in this case was upon the note and the complaint allowed credit for the amount realized on the State judgment.

Counsel for cross-appellant suggested that probably the court considered the State suit an election of remedy that barred Walsh from suing the Directors. As this is obviously not the law in a case of this character, no such assumption will be imputed in this case. The court finds itself unable to assign any reason for the change in the decision of the court on the one hand and the judgment on the other. So unexplained the action of the court constituted reversible error.

While the record, as affecting Walsh's right to recover was stipulated in general as it was in the Drake case, the court finds itself unable to remand this case with direction to the lower court to enter a judgment for Walsh, for the reason that Walsh was not a witness in the case and there is no evidence showing that he relied upon the action of the Board of Directors in making the loan to the corporation. For this reason it is necessary to remand the Walsh case to the lower court for further proceedings not inconsistent with this opinion.

The judgment as to Lawrence Drake is affirmed; as to Hugh F. Walsh is reversed.